## STATE OF NORTH CAROLINA

Buncombe _____ County

| File No. | |
| --- | --- |
| | 20CV 01793 |

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| *Name Of Plaintiff* | |
| --- | --- |
| John Caturano | |
| *Address* | **CIVIL SUMMONS** |
| 7 Arbor Ridge Trail | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *City, State, Zip* | |
| Asheville, North Carolina 28806 | |

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| *Name Of Defendant(s)* | *Date Original Summons Issued* |
| --- | --- |
| Arnehem International Corporation | 05/29/2020 |
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
| --- | --- |
| 400 E. Commercial Boulevard, Suite 400, Ft. Lauderdale, FL 33308 | |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* | *Time* | |
| --- | --- | --- | --- |
| John M. Moye, Barnes & Thornburg LLP | 05/29/2020 | 11:00 | ☒ AM ☐ PM |
| 3475 Piedmont Rd, Suite 1700, Atlanta, GA 30305 | *Signature* | | |
| | ☒ Deputy CSC ☐ Assistant CSC | | ☐ Clerk Of Superior Court |

| ☐ ENDORSEMENT (ASSESS FEE) | *Date Of Endorsement* | *Time* | ☐ AM ☐ PM |
| --- | --- | --- | --- |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Signature* | | |
| | ☐ Deputy CSC ☐ Assistant CSC | | ☐ Clerk Of Superior Court |

NOTE TO PARTIES: *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

**EXHIBIT**

tabbies

**A**

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

| STATE OF NORTH CAROLINA | File No. 20CV 01793 |
|---|---|

BUNCOMBE _____ County

In The General Court Of Justice
☐ District   ☒ Superior Court Division

FILED

**Name And Address Of Plaintiff 1**
JOHN CATURANO
c/o John M. Moye, Esq., Barnes & Thornburg LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta                                    GA   30305-3327

2020 MAY 29  A 11:09

BUNCOMBE CO., C.S.C.

BY_____

**Name And Address Of Plaintiff 2**

**GENERAL
CIVIL ACTION COVER SHEET**

☒ INITIAL FILING   ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

**VERSUS**

**Name And Address Of Defendant 1**
ARMCHEM INTERNATIONAL CORP.
3563 N.W. 53rd Court

Fort Lauderdale         FL      33309

**Summons Submitted**
☒ Yes   ☐ No

**Name And Address Of Defendant 2**

**Summons Submitted**
☐ Yes   ☐ No

**Name And Address Of Attorney Or Party, If Not Represented**
*(complete for initial appearance or change of address)*
John M. Moye
Barnes & Thornburg LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta                              GA        30305

| Telephone No. 404-264-4006 | Cellular Telephone No. |
|---|---|

| NC Attorney Bar No. 35463 | Attorney Email Address JMoye@btlaw.com |
|---|---|

☒ Initial Appearance in Case   ☐ Change of Address

| Name Of Firm Barnes & Thornburg LLP | Fax No. 404-264-4003 |
|---|---|

**Counsel For**
☒ All Plaintiffs   ☐ All Defendants   ☐ Only: *(list party(ies) represented)*

☐ Jury Demanded In Pleading   ☐ Complex Litigation   ☐ Stipulate to Arbitration

## TYPE OF PLEADING

*(check all that apply)*

- ☐ Amend (AMND)
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Assess Costs (COST)
- ☐ Answer/Reply (ANSW-Response) *(see Note)*
- ☐ Change Venue (CHVN)
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNFJ)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL)
- ☐ Contempt (CNTP)
- ☐ Continue (CNTN)
- ☐ Compel (CMPL)
- ☐ Counterclaim (CTCL) *Assess Court Costs*
- ☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
- ☐ Dismiss (DISM) *Assess Court Costs*
- ☐ Exempt/Waive Mediation (EXMD)
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Failure To Join Necessary Party (FJNP)

- ☐ Failure To State A Claim (FASC)
- ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
- ☐ Improper Venue/Division (IMVN)
- ☐ Including Attorney's Fees (ATTY)
- ☐ Intervene (INTR)
- ☐ Interplead (OTHR)
- ☐ Lack Of Jurisdiction (Person) (LJPN)
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
- ☐ Modification Of Child Support In IV-D Actions (MSUP)
- ☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
- ☐ Petition To Sue As Indigent (OTHR)
- ☐ Rule 12 Motion In Lieu Of Answer (MDLA)
- ☐ Sanctions (SANC)
- ☐ Set Aside (OTHR)
- ☐ Show Cause (SHOW)
- ☐ Transfer (TRFR)
- ☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
- ☐ Vacate/Modify Judgment (VCMD)
- ☐ Withdraw As Counsel (WDCN)
- ☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

(Over)

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

## CLAIMS FOR RELIEF

☐ Administrative Appeal (ADMA)
☐ Appointment Of Receiver (APRC)
☐ Attachment/Garnishment (ATTC)
☐ Claim And Delivery (CLMD)
☐ Collection On Account (ACCT)
☐ Condemnation (CNDM)
☒ Contract (CNTR)
☐ Discovery Scheduling Order (DSCH)
☐ Injunction (INJU)

☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
☐ Medical Malpractice (MDML)
☐ Minor Settlement (MSTL)
☐ Money Owed (MNYO)
☐ Negligence - Motor Vehicle (MVNG)
☐ Negligence - Other (NEGO)
☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
☐ Possession Of Personal Property (POPP)

☐ Product Liability (PROD)
☐ Real Property (RLPR)
☐ Specific Performance (SPPR)
☐ Other *(specify and list each separately)*

| Date | Signature Of Attorney/Party |
|---|---|
| 05/29/2020 | |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s) | ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|---|
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*



STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

FILED

2020 MAY 29  A II: 04

BUNCOMBE CO., C.S.C.

BY_____

CASE NO: __20CV  01793__

JOHN CATURANO,

      Plaintiff,

v.

ARMCHEM INTERNATIONAL CORP.,

      Defendant.

**COMPLAINT FOR
DECLARATORY RELIEF**

COMES NOW Plaintiff John Caturano ("Plaintiff" or "Caturano"), by and through the undersigned counsel and pursuant to N.C. Gen. Stat. § 1-253 *et. seq*., and brings this action against Defendant Armchem International Corporation ("Defendant" or "Armchem"), seeking a declaration from this Court that the "Non-Competition, Non-Solicitation and Confidentiality Agreement" purportedly between Caturano and Armchem is void and unenforceable, for the reasons set forth below.

In support of this Complaint, Plaintiff states and alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Caturano is a citizen and resident of Buncombe County, North Carolina. He currently resides at 7 Arbor Ridge Trail, Asheville, North Carolina, 28806.

2.      Armchem is a corporation organized and existing under the laws of Florida, with a principal place of business at 3563 N.W. 53rd Court, Fort Lauderdale, Florida, 33309.

3.      Armchem is duly registered with the North Carolina Secretary of State, is authorized to conduct business in this State, and does in fact regularly conduct business in this State.

4.      This Court has personal jurisdiction over Armchem pursuant to N.C. Gen. Stat. §

1-75.4(1) and (5), in that Armchem is engaged in substantial business within the State; employs approximately a dozen employees within this State; performs services within this State; and ships goods for delivery to customers residing in this State.[1]

5.      The Superior Court of the General Court of Justice has jurisdiction over this matter pursuant to N.C. Gen. Stat. § 7A-240 and 7A-243.

6.      Venue lies in Buncombe County, North Carolina, pursuant to N.C. Gen. Stat. § 1-82.

## FACTS

*Plaintiff Caturano's Engagement with Armchem*

7.      Armchem, founded in 1982, is engaged in the business of manufacturing, selling and distributing a range of cleaning supplies, maintenance products, and safety products to customers in various parts of the United States.

8.      In or around July 2016, Caturano was approached by Archem and asked to assist Armchem in managing Armchem's sales representatives in selling and distributing Archem's products to customers in North Carolina and other parts of the United States.

9.      During the parties' negotiations, Caturano discussed acting as a Sales Manager for Armchem, performing services for Archem through a sole proprietorship that Caturano had established to conduct business.

10.      As negotiations over this arrangement progressed, in late July 2016, Caturano travelled to Armchem's headquarters in Florida to discuss his potential engagement by Archem.

---

[1] In North Carolina, Armchem conducts business through its wholly-owned subsidiary, Handi-Clean (NC) LLC" ("Handiclean") which it acquired approximately eight years ago. All references to Armchem in this Complaint shall refer collectively to Armchem and its wholly owned affiliate Handi-Clean.

11.     In an-person meeting in Florida on July 23, 2016, Caturano and Armchem's owner, Andy Brahms, orally agreed that Caturano would represent Armchem as a Sales Manager in the territory of North Carolina, acting through his sole proprietorship.

12.     At no time during this July 23, 2016 meeting did Caturano sign any written contract commemorating his arrangement with Archem; the arrangement was agreed to orally and was described as a "handshake deal." Multiple witnesses were present at this July 23, 2016 meeting.

13.     At no time in July 2016 or thereafter did Caturano sign any type of employment agreement with Archem or any of its affiliates, nor did Caturano sign the "Noncompetition, Non-Solicitation, and Confidentiality Agreement" that is the subject of the current dispute.

14.     From July 2016 until his resignation in December 2019, Caturano acted as a Sales Manager for Armchem, supervising Armchem's sales representatives in selling and distributing products to customers in the State of North Carolina and other parts of the United States.

15.     At no time between July 2016 and his resignation was Caturano an employee of Armchem. Rather, at all times during this period, Caturano provided services to Archem as an independent contractor, acting through his sole proprietorship.

16.     All amounts paid by Archem for Caturano's services between July 2016 and his resignation were paid directly to his sole proprietorship, which business entity was paid as an independent contractor and received a Form 1099 from Archem.

17.     In December 2019, Caturano advised Archem that he would no longer be providing services to the company as a Sales Manager, and he ceased doing any work with Armchem.

*Caturano Joins Momar, Inc., Giving Rise to the Current Dispute*

18.     Shortly thereafter, in February 2020, Caturano joined Momar, Inc. ("Momar") as a Sales Manager, supervising Momar's sales team in the sale and distribution of products. Momar is a company engaged in the sale and distribution of industrial cleaning supplies, equipment, sanitizers, and maintenance products throughout the United States. Caturano's annual compensation at Momar is in excess of $25,000 per year.

19.     Since joining Momar, Caturano has not engaged in <u>any</u> solicitation of any current or former clients of Armchem; his duties are centered on managing Momar's sales team.

20.     On or around May 12, 2020, Archem sent a letter through counsel to Caturano concerning his employment with Momar (the "Letter"), a true and correct copy of which is attached to <u>Exhibit A</u>.

21.     In the letter, Archem asserted that Caturano was in violation of a July 23, 2016 "Noncompetition, Non-Solicitation, and Confidentiality Agreement" (the "Agreement") purportedly between Armchem and Caturano. A copy of the Agreement was attached to the Letter. *See* <u>Exhibit A</u>.

22.     The Agreement attached to the Letter purports to contain Plaintiff Caturano's signature. *See* Agreement at 8. However, as discussed above, Caturano never signed the Agreement that is attached to <u>Exhibit A</u>, nor did he sign <u>any</u> agreement relating to his engagement by Armchem as an independent contractor between July 2016 and the present.

23.     The Agreement refers to Caturano as an "<u>Employee</u>" of Archem. Agreement at 1. However, as discussed above, Caturano was never an employee of Archem between July 2016 and the present. At all times during that period, Caturano was engaged with Archem through his sole proprietorship, which business was paid as an independent contractor. At no time during

this period did Caturano receive compensation or wages as an employee of Archem.

24.     In the Letter, Armchem demanded that Caturano "[i]mmediately cease and desist [his] employment with Momar," asserting that, simply by accepting employment with Momar, Caturano was "in violation of [his] Agreement." *See* Exhibit A at 2-3. Armchem advised that if Caturano did not immediately terminate his employment with Momar, Armchem would "file suit against [Caturano] and seek injunctive relief, damages, costs, and attorneys' fees." *Id.* at 3.

## FIRST CAUSE OF ACTION
## DECLARATORY RELIEF PURSUANT TO N.C. GEN. STAT. § 1-253

25.     Caturano incorporates by reference the allegations set forth above as if fully alleged herein.

26.     Pursuant to N.C. Gen. Stat. § 1-253, this Court has the power to declare the rights, status, and obligations of the parties where there is a case or controversy between the parties.

27.     There exists an actual case or controversy between the parties related to the validity and enforceability of the Agreement between Caturano and Archem, and Caturano's rights and obligations in his current position with Momar.

28.     First, Armchem seeks to enforce the Agreement against Caturano, asserting that he is bound by the Agreement as an "Employee" of the company. *See* Exhibit A and Agreement at 1.

29.     However, Caturano was not an "employee" of Armchem between July 2016 and his resignation, nor was he paid any consideration as an employee for the services he provided to Armchem during this period. All payments from Archem were to Caturano's separate sole proprietorship and were reported as 1099 income. Accordingly, the Agreement is unenforceable as against Caturano individually.

30.     Second, Archem asserts that the Agreement obligates Caturano to terminate his

employment with Momar immediately, based upon the Agreement that purportedly contains his signature. As discussed above, however, Caturano did not sign the Agreement attached to Exhibit A. Thus, the Agreement is unenforceable against him.

31. Third, even if the Agreement had been signed by Caturano, and even if it were supported by consideration, the Agreement by its terms is unduly onerous, overly broad, and violates the law and public policy of North Carolina, and thus it is unenforceable as a matter of law.

### PRAYER FOR RELIEF

**WHEREFORE,** Caturano respectfully requests that this Court:

(a) Enter a declaratory judgment pursuant to N.C. Gen. Stat. § 1-253 *et seq*, declaring that the "Noncompetition, Non-Solicitation, and Confidentiality Agreement" purportedly between Caturano and Armchem is void and unenforceable as a matter of law;

(b) Award Caturano his reasonable attorneys' fees and costs incurred in this matter;

(c) Award such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 29th day of May, 2020.

John M. Moye (NC State Bar 35463)
Barnes & Thornburg LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305-3327
Tel.: (404) 264-4006
Cell: (919) 802-4436
Fax: (404) 264-4033
JMoye@btlaw.com

*Counsel for Plaintiff Caturano*

# EXHIBIT A TO COMPLAINT



**The Soto Law Group, P.A.**
EST. 1997
AV RATED FIRM
BUSINESS & CONSTRUCTION LAWYERS
2400 E. COMMERCIAL BOULEVARD, SUITE 400
FORT LAUDERDALE, FL 33308
TEL. (954) 567-1776 · FAX (954) 567-1778

Basil D. Sabbak, Esq.
Basil@sotolawgroup.com
Oscar E. Soto, Esq.
Oscar@sotolawgroup.com

May 12, 2020

| | |
|---|---|
| <u>VIA U.S. MAIL</u><br>John Caturano<br>7 Arbor Ridge Trail,<br>Ashville NC 28806 | <u>VIA U.S. CERTIFIED MAIL, RETURN</u><br><u>RECEIPT REQUESTED</u><br><u>#7017 1070 0000 8294 5768</u><br>MOMAR INCORPORATED<br>1830 Ellsworth Industrial Drive,<br>Atlanta, GA 30318 |

**RE:** *<u>DEMAND TO CEASE AND DESIST VIOLATIONS OF EMPLOYMENT</u>*
*<u>AGREEMENTS WITH ARMCHEM INTERNATIONAL CORPORATION</u>*

Dear Mr. Caturano,

Please be advised the undersigned represents Armchem International Corp. (hereinafter "ARMCHEM")[1]. This letter shall serve to remind you of your continuing obligations to ARMCHEM under your Employment and Confidentiality Agreement, dated July 23, 2016 (hereinafter, the "Agreement"). As the Agreement states, your obligations to ARMCHEM include an obligation to any affiliates or subsidiaries of ARMCHEM for example but not exclusive to Handi-Clean Products, Inc. Copies of the Agreement are attached hereto for your review.

ARMCHEM demands that you immediately CEASE AND DESIST any and all acts that constitute a violation of the Agreement and further refrain from taking such actions that may breach the Agreement. Should you refuse this demand, ARMCHEM will immediately exercise its right pursuant to the Agreement to file suit to enjoin you from violating same, as well as seek all other remedies available at law.

---

[1] Any reference to ARMCHEM includes it affiliates and subsidiaries as described in the Agreement.

It has come to ARMCHEM's attention that following your resignation on or around December of 2019, you began working for MOMAR INCORPORATED (hereinafter "MOMAR"), a competitor of ARMCHEM. Pursuant to your Agreement, for a period of two (2) years immediately following the termination of or resignation from your employment with Armchem, you agreed:

> ...not to compete, directly or indirectly, by engaging in a business or business venture which is identical, similar and/or substantially similar to the business of ARMCHEM within any territory or geographic region serviced by ARMCHEM, its employees or associates.

Thus, your employment with MOMAR within the territory/geographic regions serviced by ARMCHEM is **prohibited by your Agreement and constitutes a violation of same**.

Furthermore, pursuant to your Agreement with ARMCHEM you have also agreed for a period of two (2) years following the termination of your employment with ARMCHEM:

> ... not to contact or solicit, directly or indirectly, any past or present customers of ARMCHEM, whether the customers of ARMCHEM were customers at the time Employee was employed with ARMCHEM or not, regardless of how the customer relationship was developed, for the purpose of selling products similar to those sold by ARMCHEM. Associate further understands the term customer shall mean any customer that did business with ARMCHEM during Employee's employment with ARMCHEM.

Be advised that pursuant to your Nonsolicitation Agreement, you have agreed that a minimum nominal and/or liquidated damages in the amount of One Thousand Dollars ($1,000.00) multiplied by the number of ARMCHEM customers solicited by you post-association with ARMCHEM, is due immediately to ARMCHEM in the event of a breach of the Nonsolicitation Agreement.

Be further advised that you also have obligations to ARMCHEM with respect to its Confidential Business Information as detailed in your Agreement. Disclosure, misappropriation or use of ARMCHEM's confidential business information or trade secrets by you or MOMAR will expose you and MOMAR to liability for damages under state law, and the Uniform Trade Secrets Act. Moreover, by executing the Agreement you agreed and acknowledged that any violation of the terms of the Agreement would irreparably injure ARMCHEM and that injunctive relief would be necessary to protect ARMCHEM's business interests.

Within the Agreement you acknowledged and agreed Confidential Business Information included "contents of all personnel files of ARMCHEM and all employee or associate information, salary and bonus information". Accordingly, you must cease and desist contacting ARMCHEM employees regarding their employment and/or employment status. **Any solicitation of ARMCHEM employees is prohibited by and a violation of your Agreement.**

Immediately CEASE AND DESIST your employment with MOMAR, as such employment is a violation of your Agreement. Further, CEASE AND DESIST any and all solicitation of ARMCHEM's past or present customers, as well as any use or disclosure of ARMCHEM's confidential business information. Immediately return all information, documents and/or property of ARMCHEM that may be in your possession. If you do not cease and desist, or if you fail to return any property belonging to ARMCHEM that is in your possession, ARMCHEM will exercise its right to file suit against you and seek injunctive relief, damages, costs and attorneys' fees pursuant to the Agreement and/or statute.

Please acknowledge your receipt of, and intent to abide by, the demands herein within 10 days of the date of this letter. If you have any questions, please do not hesitate to contact the undersigned.

ARMCHEM reserves all rights, remedies and defenses.

**GOVERN YOURSELF ACCORDINGLY.**

Respectfully,

*Oscar E. Soto*

Oscar E. Soto, Esquire
Basil D. Sabbak, Esquire
For the firm

OES/bds
cc: Client



3563 N.W. 53rd Court
Fort Lauderdale, FL 33309
www.armchem.com
800-886-0423

## NONCOMPETITION, NONSOLICITATION AND CONFIDENTIALITY AGREEMENT

This Agreement made this 25 day of July . 2016 by and between ARMCHEM INTERNATIONAL CORPORATION[1] (hereinafter referred to as "ARMCHEM"), and John Catrano . whose address is 1155 Widgeon Rd . Wellington FL 33414 (hereinafter referred to as "Employee").

In consideration of the covenants and agreements contained herein, the parties hereto agree as follows:

WHEREAS, ARMCHEM in the course of its business develops, acquires, and uses valuable confidential business information, including but not limited to customer lists, business leads, search engine optimization techniques and website;

WHEREAS, ARMCHEM desires to protect itself, its employees, associates, and other business entities with which ARMCHEM does business from unauthorized uses and disclosures of such confidential business information; and

WHEREAS, ARMCHEM desires to employ, or continue to employ, the Employee and Employee desires to accept employment or to continue employment with the company.

NOW, THEREFORE, in consideration of the employment or continued employment by ARMCHEM of the Employee, the receipt and sufficiency of which is acknowledged by Employee, ARMCHEM and Employee agree:

1.    Employment

Employee agrees to accept employment with ARMCHEM and ARMCHEM agrees to employ Employee for an indefinite term. Either party may terminate the term of employment at-will but said termination shall not affect the covenants and restrictions contained herein.

---

[1] The term Armchem International Corporation shall mean Armchem International Corporation, a Florida corporation, and shall also include Armchem's affiliates The Brahms Group, Inc., a Florida corporation; Handi-Clean Products, Inc., a North Carolina corporation; Handi-Clean (NC), LLC, a Florida limited liability company; and any other affiliates or subsidiaries of Armchem. All duties owed by Employee herein to Armchem shall also be owed to Armchem's affiliates as stated herein.

REV: 12-09-2013                                    1                                    Initial

2.   Capacity

Employee is employed in the capacity of outside sales for ARMCHEM and during their employment. Employee shall devote their full working time and best efforts to ARMCHEM. Employee agrees to be sober and industrious and to conduct themselves at all times in a manner that will reflect credit upon himself and the Company.

3.   Confidential Business Information – Defined

Confidentiality: I acknowledge that ARMCHEM has developed and utilizes in its business certain Confidential Information (as defined below) and, during the course of my employment with ARMCHEM I will or may be exposed to or have access to such Confidential Information. I acknowledge and agree that the Confidential Information is the sole and exclusive property of ARMCHEM, (or third party providing such information to ARMCHEM) and that ARMCHEM or such third party owns all worldwide rights therein under patent, copyright, trade secret, confidential information, or other property rights laws. I acknowledge and agree that the disclosure to me of, and or access given to me as to the Confidential Information does not confer upon me any license, interest or rights of any kind in or to any of the Confidential Information. I acknowledge that I may use the Confidential Information solely for the benefit of ARMCHEM and only while I am employed or retained by ARMCHEM. I agree to hold in confidence and not disclose, reproduce, transmit, reverse engineer, decompile, disassemble, or transfer directly or indirectly, in any form, by any means, or for any purpose the Confidential Information or any portion thereof.

The Employee recognizes, acknowledges and agrees that the documents, lists, files, records, data and other information developed and acquired by ARMCHEM, whether in electronic or any other format, including all information acquired and developed by Employee, in the course of his or her employment with ARMCHEM as it may exist from time to time, are considered valuable and confidential and include without limitation:

(a)   contents of all personnel files of ARMCHEM, and all employee or associate information, salary and bonus information;

(b)   all general correspondence concerning ARMCHEM;

(c)   all documents concerning or referring to the financial aspects of ARMCHEM;

(d)   all electronic data processing, word processing and/or computer programs, runs and other electronic products, information and records generated by ARMCHEM, and all computer access codes;

(e)   all documents describing procedures or methods employed by ARMCHEM in soliciting, procuring and handling business, including shipping and billing procedures;

REV: 12-09-2013                              2                              Initial _____

(f)   all information acquired by ARMCHEM relating to prospective and current business transactions and arrangements;

(g)   all marketing analysis and/or demographic information or studies on the current and/or potential markets of interest to ARMCHEM;

(h)   all business agreements and understandings between ARMCHEM and other persons and entities;

(i)   all documents provided to ARMCHEM in confidence by third parties;

(j)   all legal documents and correspondence concerning ARMCHEM;

(k)   all opinions, decisions, rulings, and audits of governmental agencies relating to ARMCHEM;

(l)   all customer and client lists, whether compiled by ARMCHEM or Employee, in full or in part;

(m)   all files concerning company customers and clients and the contents of such files;

(n)   all ARMCHEM Inventions[2], Intellectual Property[3], and Works[4];

(o)   all other information that is specifically designated confidential by ARMCHEM.

---

[2] *Inventions* means any and all ideas, designs, concepts, techniques, technology, know-how, processes, methods, configurations, inventions, discoveries, and improvements, regardless of whether they are patentable or subject to protection under applicable copyright, trademark, trade secret or other laws governing the protection of Intellectual Property.

[3] *Intellectual Property* means any and all intellectual property rights, including, without limitation United States and foreign patents, copyrights, trademarks, service marks, trade names, mask words (and any and all rights in applications, actions, and registrations relating thereto), trade secrets, know-how, moral rights, and rights of publicity.

[4] *Works* means products, devices, equipment, information, data and works of authorship, including and Inventions related thereto, and includes, without limitation, databases, lists, computer source code and object code, mask works, drawings, artwork, notes, memoranda, specifications, devices, formulas, and documents of any nature, and any and all copies thereof, whether stored electronically or made tangible through any other medium created by ARMCHEM, owners, Employees, Associates or independent contractors, or licensed to or purchased by ARMCHEM.

REV: 12-09-2013                    3                    Initial

4.      Confidential Business Information – Admissions

The Employee admits that such confidential business information is valuable, special and unique asset of ARMCHEM's business and gives ARMCHEM advantage over its actual and potential competitors, and the Employee further admits and agrees that:

(a)     ARMCHEM has implemented such practices and measures as are reasonably necessary to preserve and to protect the confidentiality of such business information;

(b)     Employee has access to such confidential business information;

(c)     Employee has been instructed about and knows and understands the value and importance of such confidential business information;

(d)     Employee by reason of the trust relationship arising between Employee and ARMCHEM owes ARMCHEM a fiduciary duty to preserve and protect such confidential business information from all unauthorized disclosures and unauthorized use;

(e)     such confidential business information constitutes trade secrets under 688.002(4), Florida Statutes, as amended; or applicable state law outside of Florida;

(f)     unauthorized disclosure and/or unauthorized use of such confidential business information would irreparably injure ARMCHEM;

(g)     all such confidential business information is to be preserved and protected, and not to be disclosed or made available, directly or indirectly, to third persons for purposes unrelated to the business objectives or ARMCHEM without prior written authorization of an executive officer of ARMCHEM, and is not to be used, directly or indirectly, for any purpose unrelated to the business objectives of ARMCHEM without prior written authorization of an executive officer of ARMCHEM;

(h)     confidential information about ARMCHEM, its associates, affiliates or its employees should not be disclosed or used for personal gain;

(i)     as an ARMCHEM employee, you have an obligation to protect the confidential nature of relationships with former, present, and prospective customers of ARMCHEM. Any confidential information about customers that you acquire must be used solely for proper purposes of ARMCHEM, and this information may not be revealed to any unauthorized person(s) under any circumstances.  It is your responsibility to always maintain

     •    confidentiality and to follow all the specific procedures established by
ARMCHEM and/or its customers;

(j)    from time to time, you may have access to confidential
media/press/marketing information involving ARMCHEM
affairs, customers, advertising, news stories prior to their release dates,
and so forth. Unauthorized disclosure of this information is detrimental to
ARMCHEM and its customers. At no time should an Employee
knowingly discuss this information;

(k)    confidential information must be kept confidential. Failure to maintain
confidential information may result in discipline up to and including
severance of our business relationship, as well as legal action being taken
against you for an injunction and/or money damages;

(l)    in the instance Employee has a question about whether specific
information is considered confidential, Employee agrees that they shall
request clarification from a designated company official in writing;

(m)    in the event Employee's business relationship with ARMCHEM
is severed for whatever reason, Employee agrees that they shall meet
with a designated representative to review the obligations set fourth in
this agreement. This meeting shall take place immediately upon
severance of the relationship and Employee shall fill out an exit form;

(n)    Employee agrees that upon severance of their business relationship with
ARMCHEM, all ARMCHEM confidential materials
shall otherwise be returned immediately to: ARMCHEM, 3563 NW 53rd Ct.,
Fort Lauderdale, Florida 33309.

5.    <u>Covenant Not to Compete and Non Solicitation Restrictions</u>

The Employee understands and agrees that all such confidential business information is
to be preserved and protected, is not to be disclosed or made available, directly or indirectly, to
third persons for purposes unrelated to the business objectives of ARMCHEM without prior
written authorization of an executive officer of ARMCHEM and is not to be used, directly or
indirectly, for any purposes unrelated to the business objectives of ARMCHEM without prior
written authorization of an executive officer of ARMCHEM, specifically.

Employee agrees after termination or severance, *whether for cause or no cause*, from his
or her position as an Employee of ARMCHEM for a period of two years not to compete, directly
or indirectly, by engaging in a business or business venture which is identical, similar and/or
substantially similar to the business of ARMCHEM within any territory or geographic region
serviced by ARMCHEM, its employees or associates. The time period covered by this covenant
contained herein shall not include any period of violation of any covenant of any period of time
required for litigation to enforce said covenant. Employee also agrees during this two year

period not to contact or solicit. directly or indirectly. any past or present customers of ARMCHEM whether the customers of ARMCHEM were customers at the time Employee was employed with ARMCHEM or not. regardless of how the customer relationship was developed. for the purpose of selling products similar to those sold by ARMCHEM. Employee further understands the term customer shall mean any customer that did business with ARMCHEM during Employee's employment with ARMCHEM.

**Employee herein expressly acknowledges and consents to personal jurisdiction in Florida with respect to any and all disputes arising from this Agreement; Employee further acknowledges that any and all damages, whether alleged or proven, that are claimed by ARMCHEM as a result of any breach of this Agreement arise from Employee's activities in connection with Florida and that a minimum nominal and/or liquidated damages in the amount of One Thousand Dollars ($1,000.00) multiplied by the number of ARMCHEM customers solicited by Employee post-employment with ARMCHEM, are due immediately to ARMCHEM at its principal place of business in Florida in the event of breach of this Agreement. Employee further hereby recognizes and consents that in the event of breach of the Agreement, he or she will be haled into court in Florida, and that the Agreement is enforceable in and by Florida courts.**

Employee acknowledges and confirms that ARMCHEM will be irreparably injured if Employee violates any terms of the Agreement including, but not limited to, contacting present and former customers of ARMCHEM for a period of two years after termination and/or resignation with or without cause. Employee further acknowledges that injunctive relief is reasonably necessary to protect ARMCHEM's business interests.

In the event that a court of competent jurisdiction determines that the time or distance involved in this covenant is unreasonable. the covenant shall automatically be modified to comply with such time or distance as the court determined to be reasonable. This covenant shall survive the expiration or termination of this Agreement.

Employee also acknowledges that threatened misappropriation of trade secrets or dissemination of confidential information may be enjoined, and that Employee is obligated to immediately report to ARMCHEM any unauthorized disclosures or uses of ARMCHEM's trade secrets or confidential information which may come to Employee's attention.

6. <u>Ownership of Customer Information</u>

All customer lists. customer information, or any other customer-related documents and knowledge which is conveyed. developed. or implemented by Employee while an Employee of ARMCHEM is the sole and exclusive property of ARMCHEM and is **CONFIDENTIAL, PROPRIETARY INFORMATION** of ARMCHEM. Employee will promptly disclose and share with ARMCHEM all such information and will assist ARMCHEM in use of such information. Upon request. Employee shall turn over all such information to ARMCHEM. Employee agrees to furnish a copy of this agreement to all subsequent business associates and/or employers within the two year period following termination or severance.

The prevailing party in any litigation, arbitration and/or appeal arising from the enforcement of this Agreement is entitled to recover from the other party costs of litigation including, but not limited to, a reasonable attorneys fees up through and including the appellate process. For the purpose of this agreement, the term employer includes ARMCHEM and all of ARMCHEM's subsidiaries and affiliates, including Handi-Clean Products, Inc., a North Carolina corporation, and Handi-Clean (NC), LLC, a Florida corporation. ARMCHEM reserves the right to assign this Agreement to an affiliated Employer and to any successor in interest to its business without notice to the Employee and all the terms and conditions shall remain in full effect thereafter.

7.    Miscellaneous Provisions

(a) Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the local laws of the State of Florida without reference to that state's rules regarding choice of law. Any litigation arising hereunder shall be instituted, at the election of the Company, in the State or Federal Courts encompassing Broward County, Florida. All Parties agree that venue shall be proper in Broward County, Florida for all such legal or equitable proceedings.

(b) Entire Agreement. This Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, both written and oral, among such parties with respect to such subject matter. This Agreement may not be amended or modified in any way, except by a written instrument executed by all of the parties hereto.

(c) Severability. If any provision of this Agreement is contrary to, prohibited by or deemed invalid under applicable law or regulation, such provision shall be inapplicable or deemed omitted to the extent so contrary, prohibited or invalid, but the remainder of this Agreement shall not be invalidated thereby and shall be given full force and effect. If any provision of this Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning which renders it valid and enforceable.

(d) Acknowledgement. Employee represents and agrees that they fully understand their right to discuss all aspects of this Agreement with a private attorney and that to the extent, if any, that Employee desires to alleviate themselves of this right, that they have carefully read and fully understand all of the provisions of this Agreement and that they have freely and voluntarily entered into it and has read this document in its entirety and fully understands the meaning, intent and consequences of this document.

Initial _____

Dated: _____

ARMCHEM INTERNATIONAL CORP.

By: *Nicole Merganeli*

Title: *HR Recruiter*

_____
Employee Signature

## ACKNOWLEDGEMENT

STATE OF FLORIDA *FL* )

COUNTY OF *Broward* )

    The following person, *John Caturano*, appeared before the undersigned and after being sworn did execute this document in the presence of a notary as authorized by applicable law on *25, July 2016* (day, month, year) and is either known personally to me or produced a driver's license as identification.

_____
Notary Public

**YANETTE MANTRO**
MY COMMISSION # FF897689
EXPIRES July 09, 2019
(407) 398-0153   FloridaNotaryService.com

REV: 12-09-2013          8          Initial _____