IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| JOHN CATURANO,<br><br>    Plaintiff – Counterclaim Defendant,<br><br>v.<br><br>ARMCHEM INTERNATIONAL CORP.,<br><br>    Defendant- Counterclaimant. | Civil Action No.<br>1:20-cv-00173-MOC-DCK |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT JOHN CATURANO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY DISCOVERY AND RULE 26 OBLIGATIONS**

COMES NOW Plaintiff/Counterclaim-Defendant John Caturano ("Caturano"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 26 and Local Civil Rule 7.1, and submits this Memorandum of Law in Support of his Motion to Stay Discovery and all applicable Rule 26 obligations until the Court has ruled on one or both of the threshold, dispositive motions currently pending before the Court.

**INTRODUCTION**

Caturano brings this Motion to stay fact discovery in this case—including any pending third party subpoenas issued by Defendant/Counterclaimant Armchem—for three separate reasons.

First, Armchem has filed a Motion to Transfer this case to the Southern District of Florida based upon the forum selection clause in Caturano's alleged "agreement," or, alternatively, based upon the factors that courts apply under 28 U.S.C. § 1404. In doing so, Armchem has vigorously asserted that this Court is an improper forum for this litigation and that the case should be transferred to Florida. Although Caturano disputes this, and contends that a transfer is not

warranted, Armchem's Motion to Transfer implicates the key threshold issue of which court this case will proceed in—a question which remains unresolved at present. Armchem's Motion also implicates the question of whether the alleged "agreement" between Armchem and Caturano is in fact valid and enforceable at all. Both of these issues are threshold issues that should be resolved before any fact discovery proceeds in this case, as resolution of one or both of these issues will significantly alter the trajectory of the case going forward. Armchem's Motion to Transfer is ripe for disposition by this Court.

Moreover, Caturano has separately filed a Motion to Dismiss many of the Counterclaims filed against him, for failure to state a claim under Rule 12(b)(6). Caturano's motion likewise is pending with this Court and is ripe for disposition. Given the pendency of these two motions, and their significance to the case, this Court should, in its discretion, stay any fact discovery pending a resolution of these preliminary motions and the threshold issues they implicate.

Second, Armchem has asserted since the commencement of this action that this case should not be litigated in this Court and that jurisdiction over this case should be transferred to the Southern District of Florida. Despite this, as explained below, Armchem now seeks to pursue third party fact discovery in this case, serving a subpoena issued from this Court to pursue vast amounts of documents that Armchem contends are relevant to its Counterclaims. Having repeatedly and consistently argued that this forum is not the proper one for this case to proceed, Armchem should not be permitted to pursue fact discovery using the subpoena power of this Court, and should be precluded from pursuing fact discovery until the threshold issue of the proper forum is resolved.

Third, Armchem seeks discovery (including a third party subpoena) before any of the required Rule 26 "pre-discovery" steps have been engaged in by the parties. No Rule 26(f) conference has been held, and no Rule 26(f) Report has been submitted, due to the pending

dispositive motions before the Court. Under Rule 26, "[a] party may not seek discovery **from any source** before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1) (emphasis added). Accordingly, Armchem's document subpoena (and any other fact discovery it may seek to pursue) is premature, given the current posture of the case.

For all of these reasons, and as more fully discussed below, this Court should grant Caturano's Motion and stay any fact discovery pending resolution of one or both of the pending motions before the Court. Doing so will conserve the resources of the parties and this Court—as well as those of the non-party that is the subject of Armchem's subpoena—and will avoid unnecessary expense and burden, given the uncertainty over whether this Court is the proper forum for this action.

## PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant/Counterclaim-Plaintiff Armchem International Corporation ("Armchem") "is in the business of manufacturing, selling, and distributing a range of cleaning supplies, maintenance products, and safety products to customers in various parts of the United States." *See* Armchem's Counterclaims [Dkt. 3] at ¶ 5. From July 2016 until his resignation in December 2019, Caturano acted as a Sales Manager for Armchem, "supervising Armchem's sales representatives in selling and distributing products to customers in the State of North Carolina and other parts of the United States." *Id.* at ¶¶ 26-27. Armchem alleges that in July 2016, at the beginning of his engagement with Armchem, Caturano entered into a "Noncompetition, Nonsolicitation and Confidentiality Agreement" ("the agreement," "the alleged agreement," "the contract," or "the alleged contract") with Armchem. *Id.* at ¶ 9. This alleged agreement contains a forum selection clause requiring the parties to litigate any dispute arising under the agreement in the state or federal courts of Broward County, Florida. *Id.* at ¶¶ 15-16.

3

In February 2020, after resigning from Armchem, Caturano began his employment with Momar, Inc. ("Momar"). *Id.* at ¶¶ 31-33. In May 2020, Armchem sent Caturano a letter claiming that, by virtue of his employment and activities with Momar, he was in violation of the alleged agreement. *See* Dkt. 1-1 ¶¶ 20-21. The letter contained a copy of the alleged agreement, which purported to contain Caturano's signature. *Id.* at ¶¶ 21-22. However, Caturano never signed the agreement; in fact, he has alleged that he had never even <u>seen</u> the agreement prior to receiving it as an attachment to the cease and desist letter from Armchem. *Id.* at ¶¶ 12-13, 22. Caturano has submitted three separate Declarations substantiating this position.

After receiving the cease and desist letter with the alleged "agreement," Caturano promptly initiated this action in the Buncombe County Superior Court by filing a complaint for declaratory relief, seeking a declaration that the alleged agreement, which Caturano never signed, is void and unenforceable—not only because he never executed it, but also because it is unenforceable as a matter of North Carolina law and public policy. *See generally* Dkt. 1-1.

Armchem removed the action to this Court and filed an Answer and five (5) separate counterclaims against Caturano. *See generally* Dkt. 3. Armchem's Counterclaims allege that "Caturano has violated the terms of the Agreement by ... [r]eaching out to several [Armchem] sales representatives and recruit[ing] them to go to work for Momar"; "[u]sing the Confidential Information he learned while at Armchem to successfully recruit salespeople from Armchem or its related companies to go to work for Momar"; and "[u]sing Confidential Information he learned while at Armchem to benefit Momar in keeping its current clients, developing new clients, and soliciting Armchem clients to purchase competing products from Momar." *Id*. at ¶ 36. Armchem also alleges that Caturano is "competing directly with Armchem in the restricted geographical

territory by working for Armchem's direct competitor in the same or similar capacity as his job at Armchem." *Id.* at ¶ 36; *see also id.* at ¶¶ 46-48.

Armchem also alleges that Caturano had "a fiduciary duty to preserve and protect such confidential business information from all unauthorized disclosures and unauthorized use," and that he breached that duty by using such information in a way that places his own interests, and the interests of Momar, over those of Armchem. *Id.* at ¶¶ 73-74. It further claims that Caturano tortiously "interfered with the business relationship between Armchem and its current and former employees by inducing them to breach their contractual obligations with Armchem or its related companies and begin employment with a competitor of Armchem." *Id.* at ¶¶ 79, 84.

On August 12, 2020, Caturano moved to dismiss three (3) of Armchem's five (5) Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6), including Armchem's claims for breach of fiduciary duty, tortious interference with contractual relationship, and tortious interference with advantageous business relationship. *See generally* Dkt. 9 and 9-1.

On August 25, 2020, Armchem filed a Motion to Transfer with this Court, asking the Court to transfer this matter to the Southern District of Florida. *See* Dkt. 10. Armchem argues that this Court is an improper forum in light of the forum selection clause contained in the alleged agreement or, alternatively, that the case should be transferred pursuant to 28 U.S.C. ¶ 1404(a). *See generally* Armchem's Mot. to Transfer and Supporting Brief [Dkts. 10-11]. Specifically, Armchem claims "the Court's decision with regard to Armchem's Motion to Transfer will be significantly streamlined if it finds that the forum selection clause is valid and enforceable." *See* Dkt. 11 at 10. Alternatively, Armchem claims that this action should be transferred to Florida "for the convenience of the parties and witnesses, and in the interest of justice," under 28 U.S.C. § 1404(a). *Id.* at 15.

5

On August 26, 2020, the day after filing its Motion to Transfer, Armchem submitted its Response in Opposition to Caturano's Rule 12(b)(6) Motion to Dismiss. *See generally* Dkt. 12. In its response, Armchem asks "that the Court consider [the transfer] motion prior to the current Motion to Dismiss. **Should the Court grant Armchem's Motion to Transfer, it would save this Court's time and judicial resources to defer ruling on Caturano's Motion to Dismiss to the transferee court**." *Id.* at 2 (emphasis added). Thus, in responding to the Motion to Dismiss, Armchem has made clear its position that the threshold issue of which forum the case should proceed in (i.e. North Carolina or Florida) should be addressed before any steps are taken to address the substantive merits of this dispute. Caturano filed his Reply in support of the Motion to Dismiss on September 8, 2020, *see* Dkt. 15, and thus the Motion to Dismiss is now ripe for disposition by this Court.

Meanwhile, Caturano separately responded to Armchem's transfer motion, opposing the transfer because (1) the alleged agreement on which the transfer motion is primarily based is void and unenforceable since Caturano never signed it; and (2) the Section 1404(a) factors do not otherwise mandate that this action be transferred to Florida. *See generally* Dkt. 16. Armchem submitted its Reply in support of the Motion to Transfer, *see* Dkt. 17, and the Motion is also ripe for disposition by this Court.

Despite consistently and repeatedly maintaining that this action should not be litigated in this Court, and despite requesting that the Court rule on its Motion to Transfer prior to ruling on any substantive issues raised in Caturano's Motion to Dismiss, on September 22, 2020, Armchem served a subpoena issued from this Court on Caturano's employer, non-party Momar. *See* Caturano Motion to Stay Discovery [Dkt. 18], Exhibit A. In the subpoena, Armchem requests a voluminous amount of documents, some not even relating to Caturano's employment with Momar,

6

for example, by requesting documentation and HR records related to other non-party Momar employees. *Id.* For example, the subpoena seeks, among other things, all personnel files, records, and documents relating to not only Caturano but also two additional Momar employees—neither of whom are parties to this litigation. The subpoena also seeks documents related to "any other person who is or was employed by MOMAR on or after January 1, 2019 who was also employed by ARMCHEM within the past three years;" all sales related documents for Caturano and the two additional non-party employees; and "MOMAR's employee manuals, regulations, guidelines, or other guidance materials provided to all MOMAR employees." *Id.*

Importantly, the parties have not yet held their Rule 26(f) conference, given the pending Motion to Transfer and Motion to Dismiss, and thus discovery has not actually commenced. Nonetheless, Armchem is apparently attempting to begin discovery efforts—despite their being premature under Rule 26, and despite Armchem's consistent argument that the parties should not be litigating in this forum at all.

Given the premature nature of the subpoena, and the prospect of additional discovery requests from Armchem, Caturano brings his current Motion to Stay, requesting that this Court issue a stay of all discovery (including the non-party discovery served on his employer, Momar) pending the resolution of at least one, if not both, of the threshold dispositive motions currently before the Court. Caturano additionally requests that the Court stay all Rule 26 obligations (including the Rule 26(f) conference, Rule 26(a) initial disclosures, and the Rule 26(f) report) until it has ruled on one or both of the pending motions. For the reasons described below, the Court should grant Caturano's request.

## ARGUMENT AND CITATION TO AUTHORITY

Under the Federal Rules, a district court has the authority to limit the timing and sequence of discovery. Fed. R. Civ. P. 26(d). Pursuant to this discretion, a court, "for good cause," may stay discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense." *Id.* at 26(c)(1). District courts within the Fourth Circuit routinely exercise this authority to stay discovery pending the resolution of dispositive motions, because such a stay "<u>is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources</u>." *Blankenship v. Trump*, 2020 WL 748874, at *2 (S.D. W.Va. Feb. 13, 2020) (emphasis added) (citing *Thigpen v. United States*, 800 F.2d 393, 396-97 (4th Cir. 1986) (emphasis added), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988); *see also United States v. Daily Gazette Co.*, 2007 WL 7575700, at *2 (S.D.W. Va. Oct. 18, 2007)); *Campbell v. Attaway*, 2009 WL 3719420, at *3 (W.D.N.C. Nov. 4, 2009), *report and recommendation adopted*, 2010 WL 92428 (W.D.N.C. Jan. 6, 2010)); *Cleveland Const., Inc. v. Schenkel & Schultz Architects, P.A.*, 2009 WL 903564, at *2 (W.D.N.C. Mar. 31, 2009).

Indeed, granting a motion to stay pending resolution of a dispositive motion "'streamlines litigation by dispensing with needless discovery and fact-finding.'" *Blankenship*, 2020 WL 748874, at *2 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). This aligns with the interests of judicial economy, which "favor reducing the burden of discovery on parties when [a] motion to dismiss raises potentially dispositive legal issues and 'the resolution of which may obviate the need for or limit discovery in this case.'" *Id.* (citing *Slone v. State Auto Prop. and Cas. Ins. Co.*, 2019 WL 4733555, at *1 (S.D. W.Va. Sept. 26. 2019)). As this Court has aptly stated, "[i]f discovery is not stayed and if the [dispositive] motion is granted, the voluminous discovery

8

in this case would be wasteful and inefficient … the Defendants' request for a brief stay is entirely reasonable under these circumstances." *Cleveland Const.*, 2009 WL 903564, at *2.

I. **Armchem has petitioned the Court to transfer this action to the Southern District of Florida, and the parties should not proceed with discovery until the Court rules on Armchem's motion.**

　　A. *Without a stay of discovery, there is potential to waste significant judicial and party resources in light of the currently pending motion to transfer.*

Importantly, Armchem has moved to transfer this matter to the Southern District of Florida, claiming that Caturano entered into an employment agreement that contains a valid and enforceable forum selection clause requiring the dispute to be litigated in Florida. *See* Armchem's Brief [Dkt. 11] at 14-15. Indeed, Armchem argues that "the Court's decision with regard to Armchem's Motion to Transfer will be significantly streamlined if it finds that the forum selection clause is valid and enforceable." *Id.* at 10. Alternatively, Armchem argues that this action should be transferred to Florida (irrespective of the validity of the employment agreement) based upon "the convenience of the parties and witnesses, and in the interest of justice." *Id.* at 15 (quoting 28 U.S.C. § 1404(a)). Armchem supports its request for a transfer by arguing that "all of the transactions…occurred in Florida, involve Florida witnesses, [and] are made against a Florida corporation." *Id.* at p. 18.[1]

Given the pending Motion to Transfer—as well as Caturano's pending Motion to Dismiss—neither party (much less non-parties) should be put to the potentially wasteful task of gathering and producing discoverable information, and possibly litigating various discovery

---

[1] Caturano disputes this characterization and argues that this case should remain in this Court—not only because the employment agreement containing the forum selection clause is invalid, but also because the Section 1404 factors strongly favor keeping this case in North Carolina. However, Caturano's position does not change the fact that the question of which forum the case should be litigated in is a threshold issue that will shape the trajectory of this case going forward.

9

issues, when there is a chance the Court will decide this action should not proceed <u>in any capacity</u> in this forum.  Any discovery that takes place in this action in this Court would not be "transferrable" to the Southern District of Florida were the case to be transferred to that venue.  Indeed, in the event of a transfer, Armchem's subpoena to Momar—issued by this Court—would no longer be valid; Armchem would need to obtain a newly issued subpoena from the Southern District of Florida, and Momar would have to expend additional efforts and resources responding to Armchem's (second) subpoena from Florida.  It is evident (even by Armchem's subpoena to Momar alone) that there will be ample fact discovery in this action.  There is simply no reason to expend resources in the short term, including, potentially, this Court's resources, before the parties have clarity on whether this Court is the correct forum for this dispute.

It is also important to note that Armchem's Motion to Transfer could implicate a separate critical issue that will determine whether this litigation should even go forward <u>in any capacity</u>, not just in this forum:  namely, whether Caturano even signed the alleged employment agreement.  Caturano has consistently maintained that he never signed the alleged employment agreement forming the basis of this entire dispute and containing the forum selection clause on which Armchem's transfer motion is primarily based.  *See* Compl. for Declaratory Judgment [Dkt. 1-1] ¶¶ 12-13; Caturano's Dismissal Brief [Dkt. 9-1] at p. 2, n.2; Caturano's Transfer Brief [Dkt. 16] at 6-8.  He has submitted Declarations to this Court supporting his contention that he never signed the document.  Indeed, this action was <u>initiated</u> by Caturano, by filing a request for a declaratory judgment that the alleged employment agreement, under which Armchem has sought to restrict Caturano's employment activities, is void and unenforceable as a matter of law.  *See* Compl. for Declaratory Judgment [Dkt. 1-1].

In response, Armchem set forth several Counterclaims, many of which are predicated on the assumption that the alleged employment agreement in fact valid and enforceable as a matter of law. *See* Armchem's Counterclaim [Dkt. 3] ("First Counterclaim: Breach of Restrictive Covenant and Demand for Injunctive Relief," stating in Paragraph 44, "The Agreement is a valid and enforceable contract between Armchem and Caturano"); *see also id.* ("Second Counterclaim: Breach of Contract").

If, in ruling on Armchem's Motion to Transfer, this Court addresses the threshold issue of whether the alleged agreement was signed by Caturano, that will accordingly determine whether the agreement and its Florida forum selection clause is enforceable; if this threshold issue is disposed of, the inevitable "voluminous discovery in this case would be wasteful and inefficient." *See Cleveland Const.*, 2009 WL 903564, at *2. Armchem has not only sought a transfer of this action but, in doing so, has actually sought this Court's ruling on a threshold substantive issue that will determine whether Armchem has any claims against Caturano at all (and, accordingly, whether there is even a need for Caturano's declaratory judgment action to proceed). If the Court finds, as Caturano has argued, that Caturano did not execute the alleged agreement, some if not all of Armchem's claims against Caturano will wholly fail, and there will be no need for any discovery whatsoever. Thus, it would be premature and imprudent to allow discovery to proceed at this point, when there are critical, determinative issues still undecided. This Court should exercise its discretion to stay discovery until it has ruled on Armchem's Motion to Transfer (and until it has decided Caturano's Motion to Dismiss, as explained in Section II below).

> **B. *Armchem's attempt to proceed with discovery in this forum contradicts its contention that this forum is improper and the case should be transferred.***

As explained above, Armchem has argued unequivocally that this particular Court should not retain jurisdiction over this matter and that the Court should transfer the case to the Southern

District of Florida. *See* Armchem's Brief [Dkt. 11] at 10, 14-15. Yet, rather than waiting for the Court to rule on its Motion to Transfer, Armchem has attempted to proceed with non-party discovery in this forum (discovery which would be premature even if Armchem were not requesting a transfer of the case to Florida). *See infra* at pp. 14-15. Indeed, the subpoena Armchem served on Momar, Caturano's current employer, requests an extensive amount of documents, some of which relate to other Momar employees not involved in this litigation whatsoever. *See* Motion, Exhibit A (seeking all personnel files, records, and documents relating to not only Caturano but two other non-party Momar employees, in addition to "any other person who is or was employed by MOMAR on or after January 1, 2019 who was also employed by ARMCHEM within the past three years;" all sales related documents for Caturano and the same two other named Momar employees; and "MOMAR's employee manuals, regulations, guidelines, or other guidance materials provided to all MOMAR employees").

However, despite its attempt to move forward with discovery in this forum, Armchem itself has recognized the importance of deciding the threshold transfer issue before otherwise proceeding with the litigation: for example, in its response opposing Caturano's Motion to Dismiss, Armchem expressly asks the Court to address the Motion to Transfer prior to ruling on the Motion to Dismiss. *See* Armchem's Response Brief [Dkt. 12] at 2. Thus, on the one hand, Armchem is seeking to halt all further proceedings in this forum. On the other hand, it is seeking to proceed in this forum by commencing fact discovery. Armchem cannot have it both ways: it cannot ask this Court to issue and potentially enforce a subpoena against a non-party while simultaneously arguing (repeatedly) that this Court should not be hearing this dispute at all.

If Armchem contends that litigating in this forum is improper, it should not have proceeded in this forum by seeking discovery, especially when the discovery seeks a voluminous amount of

documents from a non-party to the case. Armchem's contradictory actions should not be condoned, and it should be precluded from seeking discovery in this forum when it has consistently and repeatedly maintained that this Court should not even have jurisdiction over this matter. Put simply, this Court should issue a stay of discovery until the Court rules on Armchem's pending Motion to Transfer.

**II.      The Court should stay discovery because its ruling on Caturano's motion to dismiss will potentially eliminate the need for any discovery on three of Armchem's counterclaims against Caturano.**

In addition to staying discovery pending the Court's ruling on Armchem's Motion to Transfer, good cause exists for this Court to stay discovery in light of Caturano's pending Motion to Dismiss. Caturano has sought to dismiss three of Armchem's five counterclaims. *See generally* Caturano's Memorandum in Support of Motion to Dismiss [Dkt. 9-1]. Under Rule 12, this Court can resolve whether those claims should be dismissed based solely on the pleadings. Because no discovery is necessary to resolve Caturano's motion to dismiss, a stay of discovery will not prejudice Armchem as to the pending Motion to Dismiss. Moreover, any conceivable prejudice that Armchem *might* experience is substantially outweighed by the burden that would be placed on Caturano—an individual—to engage in what promises to be extensive discovery before the Court has even determined whether the majority of Armchem's counterclaims survive dismissal.

Even if the Court grants Caturano's motion only in part, the Court's ruling could significantly narrow the scope of the issues between the parties. At this juncture in the litigation, the burden of proceeding with discovery—when it is not certain which of Armchem's counterclaims will survive—outweighs the potential benefits of fact discovery. In an effort to prevent a waste of the Court's and the parties' resources, Caturano respectfully requests that the

13

Court issue a stay of all discovery proceedings and Rule 26 obligations until the Court rules on Caturano's Motion to Dismiss, in addition to Armchem's Motion to Transfer.

### III. If the Court declines to grant a stay of discovery, the Court should prohibit Armchem from proceeding with discovery, including the non-party discovery it already served, until the parties have held their Rule 26(f) conference.

There is good cause to issue a stay of all discovery and Rule 26 obligations in light of the dispositive motions and multiple threshold issues currently pending before the Court. However, even if the Court declines to order an across-the-board stay of discovery, it should find that Armchem's subpoena to Momar is premature under the Federal Rules and is thus invalid.

Rule 26 states that "[a] party may not seek discovery **from any source** before the parties have conferred as required by Rule 26(f), except…when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1) (emphasis added). "Although Rule 45 is silent as to when subpoenas may be issued, subpoenas are discovery devices and, as such, are generally subject to the provisions of Federal Rule of Civil Procedure 26(d) governing the start of discovery." *Draper v. United States Postal Serv.*, 2018 WL 2423002, at *2 (W.D. Va. May 29, 2018), *aff'd*, 740 F. App'x 315 (4th Cir. 2018) (citing *Knott v. Nationstar Mortg., LLC*, 2016 WL 5329613 (W.D.N.C. May 15, 2017)); *see also Mort. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 566 (W.D.N.C. 2002) (adopting the rule followed by the majority of jurisdictions and holding that "a Rule 45 subpoena does in fact constitute discovery"); *Robinson v. Equifax*, 2011 WL 285232, at *4–5 (E.D.N.C. Jan. 24, 2011) (holding that a subpoena was procedurally premature under Rule 26(d)). Thus, under Rule 26, a nonparty subpoena issued before the Rule 26(f) conference is "premature." *Draper*, 2018 WL 2423002, at *2.

Here, the parties have not yet held their Rule 26(f) conference. Moreover, the parties have not stipulated to proceeding with discovery prior to the conference, nor has the Court issued any

14

orders allowing for the same. Armchem's attempt to begin the discovery process with its subpoena to Momar is premature and improper as a matter of law. The Court should not require Momar to respond to the subpoena or to prepare any objections thereto when the parties have not even conferred and prepared a Rule 26(f) discovery plan.[2]

Thus, even if the Court declines to grant Caturano's requested stay of discovery, the Court should rule that Armchem's subpoena directed to Momar is premature under the Federal Rules and is not enforceable at this stage of the litigation. *See Robinson*, 2011 WL 285232, at *4–5; *Draper*, 2018 WL 2423002, at *2.

## **CONCLUSION**

Because there are multiple dispositive motions pending before the Court, some of which might dispose of this case in its entirety, the Court should issue a stay of all discovery and all Rule 26 obligations until it has ruled on said motions and issued rulings on the important threshold issues. Alternatively, the Court should prohibit Armchem from enforcing its subpoena to Momar because it is premature and improper under Rule 26. For these reasons, Caturano respectfully requests that the Court grant its Motion.

---

[2] Indeed, by serving a third party subpoena on Momar, Armchem is indirectly attempting to obtain documents and discovery from a non-party that it would <u>not otherwise be able to obtain directly from Caturano in this litigation</u>, given that fact discovery has not yet commenced under Rule 26. Armchem's "backdoor" attempt to obtain fact discovery prior to the commencement of discovery in this case should not be permitted.

Respectfully submitted this the 2nd day of October, 2020.

/s/ *John M. Moye*
John M. Moye (NC State Bar 35463)
BARNES & THORNBURG LLP
3475 Piedmont Road, N.E., Suite 1700
Atlanta, Georgia 30305
Telephone: (404) 264-4006
Facsimile: (404) 264-4033
E-mail: jmoye@btlaw.com

*Counsel for Plaintiff- Counterclaim Defendant John Caturano*

**CERTIFICATE OF SERVICE**

This is to certify that on the 2nd day of October, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Stephen B. Williamson<br>
Jonathan H. Dunlap<br>
Van Winkle, Buck, Wall, Starnes and Davis, P.A.<br>
P.O. Box 7376<br>
Asheville, North Carolina 28802<br>
swilliamson@vwlawfirm.com<br>
jdunlap@vwlawfirm.com<br>

*Counsel for Defendant*

/s/ *John M. Moye*
John M. Moye (NC State Bar 35463)
BARNES & THORNBURG LLP
3475 Piedmont Road, N.E., Suite 1700
Atlanta, Georgia 30305
Telephone: (404) 264-4006
Facsimile: (404) 264-4033
E-mail: jmoye@btlaw.com

*Counsel for Plaintiff- Counterclaim Defendant John Caturano*