**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-cv-62359-WPD-LSS**

JOHN CATURANO,

    Plaintiff/Counter-Defendant,

v.

ARMCHEM INTERNATIONAL
CORPORATION,

    Defendant/Counter-Plaintiff.

_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISMISS
COUNTS III, IV, AND V OF ITS COUNTERCLAIM**

NOW COMES the Defendant/Counter-Plaintiff, ARMCHEM INTERNATIONAL CORPORATION ("Armchem"), by and through its undersigned counsel, files this Response to Plaintiff/Counter-Defendant, JOHN CATURANO's ("Caturano") Motion to Dismiss Counts III, IV and V of Armchem's Counterclaim (Doc. 36), and in support states as follows:

**INTRODUCTION**

This case involves an employment dispute wherein Caturano ("Caturano") is now seeking to repudiate certain noncompete and nonsolicitation provisions in an employment contract he signed with Armchem (the "Agreement")[1]. Since resigning his employment with Armchem, Caturano has been employed with for one of Armchem's direct competitors, in essentially the same region he worked for Armchem, in essentially the same position he worked for Armchem. Upon learning that Caturano was actively recruiting salespeople from Armchem and its related companies, Armchem sent Caturano a letter reminding him of his obligations under the

---

[1] Section 7(a) of the Agreement contains a choice of law provision stating, "This Agreement shall be governed by and construed in accordance with the local laws of the State of Florida."

1

Agreement. Caturano responded by filing the current action in the North Carolina Superior Court for Buncombe County. Armchem removed the case to the Federal Court of the western district of North Carolina, and then subsequently transferred the case to the Southern District of Florida based on diversity jurisdiction and filed various counterclaims sounding in breach of contract and tort. Caturano has filed the current motion seeking to have Armchem's tort counterclaims dismissed.

## **FACTS**

Armchem is a Florida corporation with its principal place of business in Broward County, Florida ("Motion to Transfer, Answer, and Counter Claims ¶ 1, Doc. 3, hereinafter "Counterclaims"). Armchem is in the business of manufacturing, selling, and distributing a range of cleaning supplies, maintenance products, and safety products throughout the United States. (Counterclaims ¶ 5.) In July of 2016, Armchem and Caturano entered into discussions about Caturano expanding his employment with Armchem. (Counterclaims ¶ 6.) In late July 2016, Caturano traveled to Armchem's headquarters in Broward County, Florida to further negotiate the terms of Caturano's employment. (Counterclaims ¶ 7-8.) During this meeting in Florida, the parties finalized the terms of Caturano's employment with Armchem, wherein he would work as one of Armchem's Sales Managers. (Counterclaims ¶ 8.)

Prior to this meeting, Caturano signed (among other documents) a Noncompetition, Nonsolicitation, and Confidentiality Agreement (hereinafter the "Agreement"). (Counterclaims, ¶¶ 9, 21; Counterclaims, Ex. A, Agreement, Doc. 3-1.)

The Agreement indicated that Armchem[2] would need to provide Caturano with certain confidential information in order to do his job. (Counterclaims ¶¶ 11-12.) The confidential

---

[2] In footnote 1 of the Agreement defines Armchem International Corporation to include Armchem's affiliates: The Brahms Group, Inc.; Handi-Clean Products, Inc.; Handi-Clean, LLC; and any other affiliates or subsidiaries of Armchem. It also states, "All duties owed by Employee (Caturano) herein to Armchem shall also be owed to Armchem's affiliates as stated herein. Any reference to Caturano's duties under the Agreement or to Armchem in this Response includes Armchem's affiliates as specified in footnote 1 of the Agreement.

information included information about Armchem's customers, business practices, strategies, as well as information about Armchem's, personnel, including salary and bonus information.

(Counterclaims ¶ 11.) In exchange, Caturano agreed to keep this information confidential and to not use or disclose that information other than to benefit Armchem. (Counterclaims, ¶ 14.) In fact, in the Agreement, Caturano acknowledged and agreed that, by reason of the relationship of trust he would have with Armchem, he would owe Armchem "a fiduciary duty to preserve and protect such confidential business information from all unauthorized disclosures and unauthorized use." (Counterclaims ¶ 14.) Caturano agreed that his obligations "shall survive the expiration or termination of this Agreement." (Counterclaims, Ex. A, Agreement, ¶ 5.)

From July 2016 until his resignation in December 2019, Armchem employed Caturano as a Sales Manager, supervising Armchem's sales representatives in selling and distributing products to customers in North Carolina and other parts of the United States. (Counterclaims ¶ 26.)

Shortly after resigning from his position at Armchem, Caturano went to work with Momar, Inc. ("Momar") as a Sales Manager. (Counterclaims ¶ 31.) Just like Armchem, Momar is in the business of selling and distributing industrial cleaning supplies, equipment, sanitizers, and maintenance products throughout the United States. (Counterclaims ¶ 33.) Momar is a direct competitor of Armchem. (Id.)

Since joining Momar, Caturano has violated terms of Noncompetition Agreement by, among other things, soliciting employees from Armchem and its affiliates to come and work for Momar and otherwise using confidential information he learned while at Armchem to the benefit of Momar and the detriment of Armchem and its affiliates. (Counterclaims ¶ 36.) Accordingly, Armchem sent Caturano a letter dated May 12, 2020, reminding him of his obligations in the Agreement and demanding he cease and desist all offending conduct. (Counterclaims ¶ 24; Counterclaims, Ex. D, May 12, 2020 Letter, Doc. 3-4.) Caturano responded by filing an action for

declaratory relief in the North Carolina Superior Court of Buncombe County on May 29, 2020. (Complaint, Doc. 1-1.)

In his Complaint, Caturano alleges that the Agreement is not enforceable as to him because 1) he alleges he never signed the Agreement (which bears his initials on every page and has a notarized copy of his signature), 2) any contract would have been with his "sole proprietorship" rather than him individually, and 3) even if the Agreement had been entered into by Caturano individually, it is unenforceable as "unduly onerous, overly broad, and violates the law and public policy of North Carolina." (Complaint ¶¶ 29-31.)

Armchem removed this case to the Western District of North Carolina on July 6, 2020 based on diversity jurisdiction (Doc. 1), and on July 13, 2020 it filed its Motion to Transfer, Answer, and Counterclaims (Doc. 3). In its Counterclaims, Armchem brings claims of breach of restrictive covenant and demand for injunctive relief, breach of contract, breach of fiduciary duty, tortious interference with contractual relationship, and tortious interference with advantageous business relationship. (Counterclaims ¶¶ 43-85.) Caturano has filed the current motion seeking to have Armchem's tort counterclaims dismissed. (Plaintiff's Motion, Doc. 36.) The case was transferred on October 13, 2020. (Doc. 19).

As will be shown below, Caturano's motion should be denied as a matter of law.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," as "threadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient. *Ashcroft, 556 U.S.* at 678 ("complaints fail when plaintiffs 'have not nudged their claims across the line from conceivable to plausible)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, at 547 (2007)).

"Only 'a short and plain statement of the claim showing that the pleader is entitled to relief' is required." *Police Priority*, 2018 WL 3747281 at *1 (quoting Fed. R. Civ. P. 8(a)(2)). "Such statement does not require 'specific facts,' but need only give defendants 'fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Thus, a complaint will be dismissed only if taking facts as true, no construction of the factual allegations will support the cause of action. *Berry v. Budget Rent A Car Systems, Inc.,* 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 127 S. Ct. at 1964-65).

## ARGUMENT

**I. ARMCHEM'S TORT CLAIMS ARE INDEPENDENT OF ITS CONTRACT CLAIMS**

Caturano alleges that Armchem's claims for breach of fiduciary duty, tortious interference with a contractual relationship, and tortious interference with business relationship, are duplicative of its breach of contract claim. (Caturano Motion to Dismiss and Supporting Memorandum of Law ⁋ 1 and 2, hereinafter "Motion to Dismiss"). However, all but three of the cases Caturano cited deal with the economic loss rule. The economic loss rule in those cases provided that: "The economic loss rule prevents a party from bringing a separate action in tort to recover for economic losses resulting [*5] from a breach of contract." *HW Aviation LLC v. Royal Sons, LLC*, 2008 U.S. Dist. LEXIS 113405, *4 (M.D. Fla. Sept. 17, 2008). In March of 2013, the Supreme Court of Florida limited the economic loss rule to cases involving product liability. *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013). The only cases that Plaintiff cites to that came after the ruling are *Kika M2M LLC v. Pittman*, No. 17-60283-CIV, 2017 U.S. Dist. LEXIS 144152, at *15 (S.D. Fla. Sep. 5, 2017), *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) and XP Glob., Inc. v. AVM, L.P., No. 16-cv-80905, 2016 U.S. Dist.

5

LEXIS 157225, at *11-12 (S.D. Fla. Nov. 14, 2016). (Motion to Dismiss (II)(A), (III)(B))

In *Kika* the defendants argued that the claim for tortious interference is barred as duplicative of the breach of contract claim. The Plaintiff did not address that argument in the response brief and the court ruled for the defendants without an analysis of the claim. See *Kika* at *15. In *Alhassid* the Court quoted Tiara saying"[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Freeman v. Sharpe Res. Corp.,* 2013 U.S. Dist. LEXIS 69681, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara*, 110 So. 3d at 407-09). In a later case the court clarified that "Florida law presents an additional hurdle for one seeking to pursue a tort claim against a party with whom it is in privity, 'namely that a party still must demonstrate that...the tort is independent of any breach of contract claim.'" *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 U.S. Dist. LEXIS 24920, at *10 (M.D. Fla. Feb. 15, 2018) *BioRamo Ltd. Liab. Co. v. Carmel Biosciences, Inc*., No. 0:18-CV-60270, 2018 U.S. Dist. LEXIS 69833, at *5-6 (S.D. Fla. Apr. 23, 2018) As such one pleading tort claims and contract claims need to show that the tort claimed is independent of its contract claim. In *XP Glob*., Inc. the Court dismissed the plaintiff's tort allegations because it was "expressly contemplated by the terms of the Agreement". Therefore, for a tort claim and contract claim to both survive the tort claim must be independent of the contract claim and not expressly contemplated by the terms of the agreement.

Caturano breached his fiduciary duty by disclosing confidential information. The only part of the Agreement that contemplates disclosure of confidential information is in section 4, and states:

> Confidential information must be kept confidential. Failure to maintain confidential information may result in discipline up to and including severance of our business relationship, as well as any legal action being taken against you for an injunction and/or money damages.

This provision only contemplates that legal action will be taken against Caturano for an injunction and/or money damages. As such, Caturano agreed to, and was fully aware that legal action could be taken against him for disclosing confidential information. If the court refuses to allow Armchem to take legal action due to Caturano's breach of fiduciary duty than it would be rewarding Caturano for his wrongful actions. The only provision in the Agreement that deals with a monetary amount is for soliciting Armchem's customers. Section 5 of the Contract provides that if Caturano breaches the agreement than Armchem is entitled to $1,000.00 multiplied by the number of customers solicited by Caturano. As such, Caturano's tort claims were not expressly contemplated by the terms of the agreement and should survive.

    Armchem's claim for breach of fiduciary duty is independent from its breach of contract claim. Armchem's breach of contract claim seeks damages for the time and resources it spent, and continues to spend, in further maintenance of the substantial relationships that are threatened based upon encroachment and wrongful competition within the restricted area and practices. Even though Caturano's fiduciary duty was expressly written in the contract, Armchem's expenses of recruiting, replacing, and training new salespeople to replace those that left due to Caturano's wrongful acts, due to Caturano's unauthorized disclosure of Armchem's, and its affiliates', employee's information are a product of Caturano's breach of fiduciary duty. The damages that stem from Caturano's breach of contract and breach of fiduciary duty are different and therefore independent.

    "Tortious interference with a contract and tortious interference with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship." *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. Dist. Ct. App. 1976). As such, Armchem will discuss how both interference claims are independent of its contract claim. There is nothing in the contract between the parties

that contemplate Caturano tortious interference with the contractual and business relationships of its employees. The Agreement states that Armchem is entitled to $1,000.00 per customer Caturano solicited from Armchem and its affiliates. There is nothing in the Agreement that provides Armchem damages for Caturano soliciting its employees. The Agreement specifically refers to disclosing confidential information. As such the terms of the Agreement did not expressly contemplate Caturano interfering with the contractual and business relationships regarding Armchem's and its affiliates', employees.

Armchem's tortious interference with a contractual and/or business relationship claims are independent from its breach of contract claim. Caturano breached the contract by disclosing the confidential information regarding Armchem's and its affiliates, employee or associate information. The tortious interference with a contractual and/or business relationship occurred by Caturano actually soliciting Armchem's, and its affiliates', employees and causing them to breach their contractual agreement with Armchem and its affiliates. As such, Armchem's claim for tortious interference with a contractual and/or business relationship is independent of its claim for breach of contract.

## II. **BREACH OF FIDUCIARY DUTY**

Under Florida law, the basic elements for a cause of action for breach of fiduciary duty are 1) the existence of a fiduciary duty, 2) breach of that duty, and 3) damages flowing from that breach. *Columbia Bank v. Turbeville*, 143 So. 3d 964, 970 (Fla. Dist. Ct. App. 2014). Florida courts recognize a fiduciary duty in various contexts "when a fiduciary has allegedly disclosed confidential information to a third party." *Gracey v. Eaker,* 837 So. 2d 348, 353 (Fla. 2002) (citing *Barnett Bank of Marion County, N.A. v. Shirey*, 655 So.2d 1156 (Fla. 5th DCA 1995)). For example, in *Sensormatic Elecs. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1191 (S.D. Fla.

2008), aff'd in part sub nom. *Sensormatic Elecs., LLC v. Kahle*, 367 F. App'x 143 (Fed. Cir. 2010), the court concluded that a former employee of the corporate plaintiff had "both an express and implied fiduciary duty" to it. The express duty arose out of his employment agreement, which prohibited him from disclosing or using confidential information. *Id*. at 1191. His implied duty arose out of his status as an employee who was entrusted with confidential information. *Id*. The court also found that, "when a person has a fiduciary duty to keep information confidential, disclosing that information is a breach of fiduciary duty." *Id*. Finally, the court found that the employee's revealing the valuable confidential information to its competitors "irreparably harmed" the plaintiff. *Id*.

Under Florida law, courts also recognize a duty of loyalty even among non-managerial employees whenever that employee is placed in a position of trust and confidence. *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010) (citing *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1149 (M.D. Fla. 2007)).

Florida Courts have ruled that for an implied fiduciary relationship to exist "there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991).

Here, Armchem has alleged that Caturano had a fiduciary relationship with it. (Counterclaims ¶ 73.) The facts pled which support that allegation are 1) Armchem entrusted Caturano with sensitive, confidential information, 2) Caturano and Armchem agreed that Caturano was in a position of trust with Armchem, 3) that Caturano agreed that he owed Armchem, and its affiliates, "a fiduciary duty to preserve and protect such confidential business information from all unauthorized disclosures and unauthorized use," and 4) that Caturano agreed that the unauthorized

disclosure or use of Armchem's confidential business information would "irreparably harm" Armchem. (Counterclaims ¶ 14; 20; 73; Moreover, Caturano unambiguously agreed in writing that he had a fiduciary duty to Armchem and its affiliates. (Counterclaims ¶ 14 (d).) Armchem had trust and confidence that Caturano would not disclose its confidential information without prior authorization to another third party. As such Caturano owed a duty of loyalty to Armchem, and its affiliates, and he breach that duty by providing Armchem's confidential information to one of its competitors. Caturano also had an implied fiduciary duty as Armchem depended on Caturano to protect its confidential information and while at Armchem Caturano did that. However, as soon as Caturano left Armchem, he broke his implied fiduciary duty for his own advantageous benefit and the benefit of Armchem's competitor Momar. Caturano explicitly agreed that he had a fiduciary duty to Armchem and its affiliates, had a position of trust that involved keeping certain information confidential, and because Armchem, and its affiliates, depended on Caturano to keep such information confidential, Caturano had both an express and implied fiduciary duty to Armchem and its affiliates. As such, Caturano's contention that Armchem fails to allege the existence of a legally cognizable fiduciary duty is without merit. (Motion to Dismiss (II)(B))

Armchem has alleged a breach of that fiduciary duty. Specifically, Armchem has alleged that, since Caturano has started working for one of Armchem's direct competitors, he has used the confidential information he learned while at Armchem to 1) recruit salespeople from Armchem or its affiliated companies to work for Momar, 2) to give an unfair business advantage to his current employer, 3) to develop new clients, keep its current clients, and soliciting Armchem's and its affiliate's customers to purchase competing products from Momar. (Counterclaims ¶ 36.)

Armchem has alleged damages that resulted from Caturano's breach of his fiduciary duty. Specifically, Armchem has alleged it has sustained and continues to sustain economic loss in the

form of lost sales, and the expense of recruiting, replacing, and training new salespeople to replace those who have left due to Caturano's actions. (Id. ¶ 75.) Further, Armchem has alleged that Caturano's use of its confidential information in violation of the terms of the Agreement has "irreparably injured" it. (Counterclaims ¶¶ 10; 14 (f); 62.)

Caturano contends that Armchem's claim for breach of fiduciary duty fail because Armchem does not allege that breach occurred until two months after Caturano left Armchem to begin employment at Momar. (Motion to dismiss (III)(C)). Caturano cites *Connely v. Special Rd. & Bridges Dist No. 5*, 99 Fla. 546, 457 (Fla. 1930), which states, "[A]fter his term of service has expired, [servant] is entitled to compete in business with his master on the same footing as a stranger, with the qualification that the servant is precluded from using for his own advantage information or material acquired by him in the course of his employment." This case is contrary to Caturano's contention as it specifically states that the servant is precluded from using for his own advantage information or material acquired by him in the course of his employment. This is exactly what occurred. He utilized confidential information, that he had a fiduciary duty to not disclose, for his advantage in competing against Armchem while employed at Momar. Caturano used confidential information including, but not limited to, Armchem's and its affiliates', employee information, client information, and other confidential information he learned at Armchem. (Counterclaims ¶ 36). According to the ruling in *Connely*, Caturano was precluded from using such information to his own advantage. Caturano also cites *Renpak inc v. Oppenheimer* 104 So. 2d 642, 645 (Fla. Dist. Ct. App. 1958) which denied a breach of fiduciary duty allegation because "[I]n the absence of an express contract equity will not enjoin an agent or employee, after the cessation of his employment, from soliciting business from customers of a former principal or employer where no business secret or trust had been reposed in him because of this relationship."

This case does not apply to Armchem's claim against Caturano as there was an express contract that was made to prevent Caturano from using confidential information from Armchem and its affiliates. The contract also stated under section (4)(e) that such confidential business information constitutes trade secrets under §688.002(4). Florida Statutes. As such, there were business secrets that had been reposed in Caturano. Caturano has not provided any case law that supports his claim and the only case law that was cited favors Armchem. The fact that Caturano didn't breach his fiduciary duty until after he left Armchem does not matter as the Contract between the two Parties state:

> I acknowledge that I may use the confidential information solely for the benefit of Armchem and only while I am employed by Armchem.

Caturano had a fiduciary duty to not disclose or use such confidential information while not working at Armchem. He breached that duty by disclosing and using such confidential information while working at Momar.

Because Armchem has pled facts sufficient to support its breach of fiduciary duty claim, has pled a cognizable legal duty, and has shown that its fiduciary duty claims are independent and not expressly contemplated in the Agreement, the Court should deny Caturano's Motion to Dismiss Count III.

### III. **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**

The elements of a tortious interference with a contractual relationship claim are, 1) the existence of a business relationship between the plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform; and (4) damage to the plaintiff resulting from the third person's failure to perform. *Seminole Tribe of Fla.*

*v. Times Pub. Co.*, 780 So. 2d 310, 315 (Fla. Dist. Ct. App. 2001) (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 385 (Fla. 4th DCA 1999); Restatement (Second) of Torts § 766 (1979)).

An interference with a contractual relationship is "intentional and unjustified" where a defendant encourages a third party to breach its non-compete or employment agreement with the plaintiff. *E.g. Se. Integrated Med., P.L. v. N. Fla. Women's Physicians, P.A.*, 50 So. 3d 21, 23 (Fla. Dist. Ct. App. 2010) (plaintiff stated claim for tortious interference of business relationship where plaintiff alleged that defendant encouraged third party to join its practice in violation of a non-compete agreement with the plaintiff) (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999); *Monco Enters., Inc. v. Ziebart Corp.*, 673 So.2d 491, 492 (Fla. 1st DCA 1996)). A tortious interference with a contractual relationship is also "intentional and unjustified" where the interference represents a breach of the defendant's duty not to use the plaintiff's confidential information improperly. *U.S. Nutraceuticals, LLC v. Cyanotech Corp.,* No. 5:12-CV-266-OC-10PRL, 2013 WL 12091694, at *5 (M.D. Fla. June 17, 2013), rev'd on other grounds, 769 F.3d 1308 (11th Cir. 2014).

Here, Armchem has alleged that it had business relationships with its current and former employees and the employees of its affiliates, and those business relationships were contractual. (Counterclaims ¶ 77; 82 ("Contractual relationships, including but not limited to non-compete and non-solicitation agreements, existed between Armchem and its current and former employees.")); see also (Agreement p 1, n.1 (defining "Armchem" to include Armchem's related companies, and stating "All duties owed by Employee herein to Armchem shall also be owed to Armchem's affiliates as stated herein.")) Armchem has alleged that Caturano knew of those relationships as the result of his employment with Armchem as a regional sales manager. (Id. ¶ 78.)

It has further alleged that Caturano's interference with those relationships was "intentional and unjustifiable," because Caturano knowingly induced those employees to breach their contractual obligations with Armchem or its affiliates and start employment with a competitor of Armchem. (Id. ¶¶ 77; 79); see *Integrated Med.*, 50 So. 3d at 23. Caturano's interference with those relationships is further "intentional and unjustified" because he is relying on confidential information he learned while at Armchem about Armchem and its affiliates' sales staff to identify and recruit them to work for Armchem's competitor. (Id. ¶ 36 (a)-(b) (alleging Caturano has used confidential information he learned while at Armchem to recruit salespeople from Armchem and its related companies); 11 (a), "Confidential Information" includes "contents of all personnel files of ARMCHEM, and all employee or associate information, salary and bonus information."; 11(g) confidential business information is "not to be disclosed or made available, directly or indirectly, to third persons for purposes unrelated to the business objectives of ARMCHEM...") ; see *U.S. Nutraceuticals*, 2013 WL 12091694, at *5. Caturano's use of Armchem's confidential business information in this way was also unjustified and malicious, in that he acknowledged that the "unauthorized disclosure and/or unauthorized use of such confidential business information would irreparably injury ARMCHEM" and that it was in violation of his fiduciary duty to Armchem. (Agreement p 4, ¶¶ 4 (f); 14(d); 73-75). As such, Caturano's Claim that his conduct is justified and furthers a legitimate business interest is without merit. (Motion to Dismiss (III)(D)).

Accordingly, Armchem has pled sufficient facts to support is claim for tortious interference with contractual relationship, and Caturano's Motion to Dismiss with regard to this claim should be denied.

## IV. <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP</u>

"Tortious interference with a contract and tortious interference with a business relationship

are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship." *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. Dist. Ct. App. 1976). The business relationship must be "valid," but it need not be evidenced by an enforceable contract. Id. at 643 (citation omitted). Further, the business relationship may be "both existing and prospective." Id.

In support of this claim, Armchem has pled that 1) its salespeople are often the only personal contact its customers have with its clients, 2) the clients often develop intimate relationships of trust with the salespeople, and 3) as such, when the salesperson moves on, the client will naturally want to follow the salesperson to the new company. (Counterclaims ¶ 20 (h)-(j).) Accordingly, when Caturano recruits Armchem's salespeople, he is very much interfering with the business relationships Armchem has with its clients because the clients will typically follow the salesperson to the competing company. See *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 651, 370 S.E.2d 375, 381 (1988) (discussing the "customer contact" theory, which recognizes that the greater an employee's customer contact is, the more likely the customer is to follow the employee when the employee leaves the employer) (citing *Harlan M. Blake, Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 657 (1960)).

Also, in the event the Court finds that the relationship Armchem had with its former employees that Caturano recruited was not contractual, Armchem brings this claim in the alternative to its claim for tortious interference with contractual relationship. In support, Armchem has alleged that it had business relationships with its current and former employees of its related companies. (Counterclaims ¶ 77.) Since the remaining elements are the same as they would be in the above claim for tortious interference with contract, Armchem would simply refer the Court to the discussion above to show it has properly pled the remaining elements of this claim and that its

claim is independent of its claim for breach of contract.

Since Armchem has pled sufficient facts to support is claim for tortious interference with advantageous business relationships, Caturano's Motion to Dismiss with regard to this claim should be denied.

**V. ARMCHEM ALLEGES THE EXISTANCE OF CONTRACTS AND/OR BUSINESS RELATIONSHIPS THAT CATURANO INTERFERED WITH**

Caturano claims that Armchem has failed to state viable claims for tortious interference with a contractual and/or business relationship because it does not even allege a business relationship or contract with which Caturano interfered. However, Armchem has properly pled in its case that Caturano interfered with its contractual and/or business relationships. Armchem has pled that Caturano interfered with business and contractual relationships, including but not limited to non-compete and non-solicitation agreements between Armchem and its former and current employees of its related companies. (Counterclaims ¶77).

Caturano claims that because Armchem has not provided specific examples of what contracts and business relationships were interfered with, that Armchem's complaint should be dismissed. (Motion to Dismiss (III)(C)). The Florida Supreme court has stated that "in order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers." *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So.2d 821 (Fla. 1996). Florida Courts clarified "identifiable customers" in a later case finding, that when pleading tortious interference, a plaintiff "need not plead an exhaustive description of each client, it must at least plausibly allege the existence of those customers via some description." *Agostinacchio v. Heidelberg Eng'g, Inc*., 2019 U.S. Dist. LEXIS 122319, *34, (S.D. Fla. February 5, 2019) (quoting *E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc*., No. 8:10-CV-1870-T-27AEP, 2011 U.S. Dist. LEXIS 97274, at *10 (M.D. Fla. Aug. 10, 2011)

(holding that business relationship with "several customers throughout the Southeastern United States" [*34] was sufficient to meet requirement of pleading "identifiable customers" for tortious interference claim.). Armchem properly pled the existence of customers via some description in its Counterclaims. During Caturano's employment with Armchem he supervised Armchem's sales representatives in selling and distributing products to customers in the State of North Carolina and other parts of the United States. (Counterclaim ¶26). Upon information and belief, Caturano's sales territory at Momar is similar to, if not the same as, his sales territory while at Armchem. (Counterclaim ¶ 35).

As such, Caturano's claim that Armchem needs to provide specific examples is without merit and Armchem's claim for tortious interference with contractual and/or business relationships should not be dismissed.

## VI. CATURANO'S MOTION TO DIMISS IS PREMATURE

Assuming arguendo that the Court rules that Armchem's tort claims are duplicative of its contract claims, Caturano brought this Motion to Dismiss prematurely. Under the federal rules, a plaintiff may plead inconsistent or alternative theories of relief. *FDIC v. Kunzmann Appraisals, No*. 12-CV-80525-RYSKAMP/HOPKINS, 2013 U.S. Dist. LEXIS 204667, at *12 (S.D. Fla. Jan. 7, 2013). Courts considering the economic loss rule in challenges to plaintiffs' tort claims at the motion to dismiss stage have held the same. See *Indulgence Yacht Charters, Ltd. v. Ardell, Inc.*, Case No. 08-cv-60739, 2008 WL 4346759, at *6 (S.D. Fla. Sept. 16, 2008) (denying defendant's motion to dismiss and finding that Rule 8(d)(2) permits parties to plead contract claims and tort claims in the same action, although the tort claims may ultimately be subject to dismissal); *Berger v. Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001). Even though tort claims may be later subject to dismissal, they can be pled as possible alternatives to claims for

relief at this stage of proceedings. See *FDIC v. Kunzman* at *13. In another case, the Court ruled on a similar motion to dismiss tort claims that were duplicative of contract claims. See *Leedom Mgmt. Grp., Inc. v. Perlmutter*, No. 8:11-cv-2108-T-33TBM, 2012 U.S. Dist. LEXIS 70976, at *13 (M.D. Fla. May 22, 2012). In that case Defendants filed a ruler 12(b)(6) motion to dismiss a claim for tortious interference with advantageous business and contractual relationships. The defendants also disputed the validity of the contract. The court ruled that the rule 12(b)(6) motion to dismiss was premature and the counterclaim for tortious interference survived the motion to dismiss. In the current case, Caturano alleges that he did not sign the Agreement and therefore cannot be in breach of contract. (Complaint ¶¶ 12-13). As there is an ongoing dispute between the two parties it is premature to dismiss Armchem's tort claims as duplicative of its breach of contract claims. As such, Caturano brought its Rule 12(b)(6) motion to dismiss prematurely and Armchem's tort claims survive.

## CONCLUSION

For the foregoing reasons, Armchem respectfully requests that the Court deny Caturano's Motion to Dismiss or in the alternative, grant Armchem leave to amend its Counterclaim to clarify and address the alleged legal challenges to Counts III, IV, and V of Armchem's Counterclaim.

By: *s/ Oscar E. Soto*
Oscar E. Soto, Esq.
Florida Bar No. 766038
SOTO LAW GROUP, P.A.
*Attorneys for Defendant, ARMCHEM INTERNATIONAL CORPORATION*
2400 E. Commercial Blvd., Suite 400
Fort Lauderdale, FL 33308
Telephone: (954) 567-1776
Email(s):   oscar@sotolawgroup.com
            rebecca@sotolawgroup.com
            eservice@businesslitigation.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of January, 2020, the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system, which will generate notification to all counsel of record, or pro se parties as may be identified below, thereby notifying all parties of record.

By: *s/ Oscar E. Soto*
Oscar E. Soto, Esq.
Florida Bar No. 766038
