**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

JOHN CATURANO,

                Plaintiff,   Case No. 0:20-cv-62359

v.

ARMCHEM INTERNATIONAL CORP.,

                Defendant.

## PLAINTIFF/COUNTERCLAIM-DEFENDANT JOHN CATURANO'S MOTION TO DISMISS AMENDED COUNTERCLAIMS AND SUPPORTING MEMORANDUM OF LAW

Plaintiff/Counterclaim-Defendant, John Caturano ("Caturano" or "Plaintiff"), by and through his undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Defendant/Counterclaimant Armchem International Corporation's ("Armchem" or "Defendant") Amended Counterclaims (DE 39-1) for: (1) breach of fiduciary duty (Count III); (2) tortious interference with contractual relationship (Count IV); and (3) tortious interference with advantageous business relationship (Count V). In support thereof, Caturano states as follows:

1. On January 12, 2021, Caturano filed a Motion to Dismiss Counts III-V of Armchem's Counterclaims. [DE 36]. In response, on January 26, 2021, Armchem filed Amended Counterclaims. [DE 39-1]. But just like the original Counterclaims, Armchem's Amended Counterclaims are legally deficient and should be dismissed for the following reasons.

2. Armchem fails to state a plausible claim for breach of fiduciary duty (Count III) because: (1) Armchem fails to allege the existence of a legally cognizable fiduciary duty; (2) Armchem's fiduciary duty claim is predicated on the same conduct as its breach of contract claim (Count II), and thus it is duplicative of its breach of contract claim; and (3) Armchem has not alleged that any breach of fiduciary duty occurred until after Caturano left his employment with

1

Armchem, at which point any alleged "fiduciary duty" had ended.

3. In addition, Armchem's claims for tortious interference with contractual relationship (Count IV) and advantageous business relationships (Count V) fail as a matter of law because: (1) the two claims are duplicative; (2) Armchem fails to allege the existence of a current or prospective contract with which Caturano allegedly interfered; (3) any interference, if any, was justified and furthered a legitimate business interest; and (4) Armchem's tortious interference claims are duplicative of its breach of contract claim (Count II).

4. For the aforementioned reasons and those described in Caturano's Memorandum of Law filed contemporaneously hereto, Caturano respectfully requests that the Court dismiss Armchem's claims for breach of fiduciary duty (Count III), tortious interference with contractual relationship (Count IV), and tortious interference with advantageous business relationship (Count V), with prejudice.

## MEMORANDUM OF LAW

Armchem "is in the business of manufacturing, selling, and distributing a range of cleaning supplies, maintenance products, and safety products to customers in various parts of the United States." Armchem's Amended Counterclaims. [DE 39-1], Counterclaim, at ¶ 6. Armchem alleges that in or around July 2016, "Caturano approached Armchem about becoming an Armchem employee in its sales department." *Id.* at ¶ 7. Armchem alleges that from July 2016 until Caturano's resignation in December 2019, Armchem "employed Caturano as a direct employee." *Id.* at ¶ 29. Caturano acted as a Sales Manager for Armchem, "supervising Armchem and its affiliates sales representatives in selling and distributing products to customers in the State of North Carolina and other parts of the United States." *Id.* at ¶ 28. Armchem alleges that in July 2016, Caturano entered into a "Noncompetition, Nonsolicitation and Confidentiality Agreement" ("the Agreement" or

"the Contract") with Armchem. *Id.* at ¶ 10.[1]

Caturano resigned from Armchem in December 2019. *Id.* at ¶ 32. He began working as a Sales Manager for Momar, Inc. in February 2020. *Id.* at ¶ 33. Armchem alleges that "Momar is a direct competitor of Armchem," as it is also "in the business of selling and distributing a range of cleaning supplies, maintenance products, and safety products to customers in various parts of the United States." *Id.* at ¶ 34-35. Armchem alleges that Caturano's responsibilities at Momar are similar to his responsibilities as a Sales Manager for Armchem and that Caturano's sales territory "is similar to, if not the same as, his sales territory while employed with Armchem." *Id.* at ¶¶ 36-37.

Armchem alleges that since starting to work at Momar, Caturano has violated the terms of the Agreement by reaching out to several Armchem sales representatives and recruiting them to accept employment at Momar; using information that he learned while at Armchem to recruit salespeople from Armchem to go to work for Momar; providing information that he learned while at Armchem in order to give an unfair business advantage to Momar; and using information he learned while at Armchem to benefit Momar in keeping, developing, and soliciting new clients. *Id.* at ¶ 38.

Armchem also alleges that Caturano has been "using Confidential Information he learned while at Armchem to the detriment of Armchem and its affiliates and to the benefit of himself and Momar; . . . [and] [o]therwise competing directly with Armchem and its affiliates in the restricted geographical territory by working for Armchem's and its affiliates' direct competitor in the same

---

[1]  Though not directly pertinent to the instant motion, Caturano has repeatedly denied ever signing the Agreement. *See, e.g.,* Caturano's Complaint, filed as *Exhibit A* to Armchem's Notice of Removal [DE 1-01], 12-13; Caturano's Response to Armchem's Motion to Transfer [DE 6], pp. 3-4.

or similar capacity as his job at Armchem." *Id.* at ¶ 38. Armchem also claims that Caturano has been "using Confidential Information to the advantage of himself and Momar and to the disadvantage of Armchem" and that Armchem "maintain[s] specific marketing, specialized training, customer goodwill, and valuable confidential business or professional information." *Id.* at ¶¶ 50, 52.

Based on the foregoing alleged conduct, Armchem has filed five amended counterclaims against Caturano (DE 39-1) for: (1) injunctive relief; (2) breach of contract; (3) breach of fiduciary duty; (4) tortious interference with contractual relationships; and (5) tortious interference with advantageous business relationships. For the reasons outlined below, Armchem has failed to state claims for breach of fiduciary duty (Count III), tortious interference with contractual relationship (Count IV), and tortious interference with advantageous business relationship (Count V), which should be dismissed with prejudice.

## ARGUMENT AND CITATIONS TO AUTHORITY

### I.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This means a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 678 ("[threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Yet, any allegations which are merely legal conclusions are not entitled to an assumption of truth. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). After an initial identification of factual allegations, the Court assumes the truth of the well-pleaded factual allegations and determines if those allegations

plausibly give rise to relief. *Iqbal*, 556 U.S. at 679. Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

**II.    Armchem Fails To State A Plausible Claim For Breach Of A Fiduciary Duty.**

    **A.    *Armchem's Breach of Fiduciary Duty Claim (Count III) Is Duplicative Of Its Breach of Contract Claim (Count II).***

Armchem pleads itself out of court by claiming that the alleged breach of a "fiduciary duty" is based on the alleged underlying employment contract. [Dkt. 39-1], Counterclaims at ¶¶ 81-85. Based upon the express allegations of the Counterclaim, Armchem negotiated a written agreement setting forth its rights insofar as Caturano's employment, including his corresponding contractual duties owed back to Armchem.  It should not be a surprise that the claims for breach of fiduciary duty are predicated upon the same set of operative facts which underly Armchem's claims for breach of contract.  Thus, the claims for breach of fiduciary duty are not separate and independent, and should be dismissed in deference to the alleged agreement between the parties.

Florida courts dismiss tort claims where an alleged breach of duty is not independent of an alleged breach of contract. *See Kika M2M LLC v. Pittman*, No. 17-60283-CIV, 2017 WL 7732872, at *5–6 (S.D. Fla. Sept. 5, 2017) (Dimitrouleas, J.) (dismissing tort claim that was duplicative of contract claim); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) (dismissing tort claim that was duplicative of contract claim); *Godwin Pumps of Am. v. Ramer,* 2011 WL 2181183, *2 (M.D. Fla. June 3, 2011) (same); *MKT REPS S.A. DE C.V. v. Std. Chtd. Bank Int'l (Ams.) Ltd.*, 2012 WL 2994125, *2-3 (S.D. Fla. July 20, 2012) (same).

Indeed, Florida courts routinely dismiss breach of fiduciary duty claims where they simply duplicate breach of contract claims. *See XP Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL

5

6679427, at *4 (S.D. Fla. Nov. 14, 2016); *Bassler v. George Weston Bakeries Distribution, Inc.*, No. 3:08-CV-595-J-32JRK, 2009 WL 10670776, at *5 (M.D. Fla. June 16, 2009), report and recommendation adopted, No. 3:08-CV-595-J-32JRK, 2009 WL 10670777 (M.D. Fla. July 14, 2009) (dismissing breach of fiduciary duty claim due to economic loss rule because "most, if not all, of the factual allegations contained in the breach of contract claim are repeated in the breach of fiduciary duty claim").

In *XP Glob., Inc.*, for instance, the court dismissed a breach of fiduciary duty claim because the plaintiff's tort allegations were "expressly contemplated by the terms of the Agreement." *Id.* Thus, the plaintiff's breach of fiduciary duty claim "relie[d] solely on the same alleged conduct forming the basis of the Plaintiff's claim for breach of contract, and is therefore barred by the independent tort doctrine." *Id.* (citing *Federal Deposit Ins. Corp. v. Law Office of Rafael Ubieta, P.A.*, 2012 WL 5307152, at *8 (S.D. Fla. Oct. 29, 2012) (dismissing fiduciary duty claim as duplicative of contract claim where the defendants' "alleged breach of the fiduciary duty . . . [was] almost inseparable from the conduct [the plaintiff] allege[d] qualifie[d] as a breach of contract")).

Here, Armchem's breach of fiduciary duty claim suffers from the same insurmountable defects. Not only does Armchem's breach of fiduciary duty claim arise from the same alleged conduct and alleged contractual duty that gave rise to its claim for breach of restrictive covenant, but Armchem has failed to allege that it suffered anything more than economic loss as a result of the alleged breach. Specifically, Armchem claims Caturano breached the restrictive covenant in two ways: (1) by allegedly "competing directly with Armchem" in the restricted territories; and (2) by allegedly "using Confidential Information to the advantage of himself and Momar and to the disadvantage of Armchem." [Dkt. 39-1] Counterclaims at ¶¶ 48, 50. Armchem also asserts that it "maintains specific marketing, specialized training, customer goodwill, and valuable

6

confidential business or professional information." *Id.* at ¶ 52.

By comparison, Armchem's breach of fiduciary duty claim states that Caturano had "a fiduciary duty to preserve and protect such confidential business information from all unauthorized disclosures and unauthorized use" and that "Caturano breached his fiduciary duty to Armchem and its affiliates, by failing to preserve and protect the Confidential Information from all unauthorized disclosures and unauthorized uses, and by using the Confidential Information in a way that places his own interest and the interest of Momar before that of Armchem." *Id.* at ¶¶ 81, 85.

On the face of the pleadings, Armchem's basis for claiming breach of fiduciary duty is precisely the same as its basis for claiming breach of contract – that Caturano allegedly misused Armchem's "Confidential Information" in a way that harms Armchem's interests. Thus, Armchem's breach of fiduciary duty claim is contemplated within the same contractual terms underlying its breach of contract claim and is barred by Florida law.

      **B.**    ***Armchem Fails To Allege The Existence Of A Cognizable Legal Duty.***

Armchem's claim fails to plead facts demonstrating that Caturano even owed a fiduciary duty. Armchem claims that Caturano owed Armchem a fiduciary duty and breached that duty by failing to protect Armchem's "Confidential Information" and by putting Caturano's interests, and the interests of Caturano's new employer, ahead of Armchem's interests. *See* [DE 39-1], Counterclaims ¶¶ 81-86. However, Armchem alleges nothing more than a traditional employer-employee relationship, which does not give rise to any such fiduciary obligations.

To establish a fiduciary relationship, "'a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'" *Hebert v. Middleby Marshall Holdings, LLC*, No. 13-61076-CIV, 2013 WL 4097779, at *3 (S.D. Fla. Aug. 13, 2013). The determination of whether a fiduciary relationship exists is fact-specific, turning on whether there is a relationship of "trust and confidence" between

7

the parties that would give rise to fiduciary duties. *See Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group, Ltd.*, No. 05–60080–CIV–MARRA/JOHNSON, 2008 WL 926513 (S.D.Fla. Mar. 31, 2008).

An employment relationship does not necessarily create a fiduciary relationship. *See Orlinksy v. Patraka*, 971 So.2d 796, 802 (Fla. Dist. Ct. App. 2007) (finding that plaintiff did not have a fiduciary relationship with her employer because plaintiff was an at-will employee). Florida courts do not find that an employee owes a de facto fiduciary duty to his employer. *Heritage Schooner Cruises, Inc. v. Cansler*, No. 13-22494-CIV, 2013 WL 5636689, at *3–4 (S.D. Fla. Oct. 16, 2013). Instead, Florida courts find that fiduciary duties are created in relationships characterized by "trust and assent." *Id.* "A fiduciary relationship arises when one person (a "principal") manifests assent to another person (an "agent") such that the agent shall act on the principal's behalf and subject to the principal's control." *Id.* (citations omitted). Without facts supporting the existence of a special degree of trust between the employee and employer, the relationship does not create the basis of a fiduciary relationship. *Id.*

In *Hebert v. Middleby Marshall Holdings,* for instance, the fact that the plaintiff was employed as a salesman from 2003-2012 and received a "salary-plus-commission compensation structure" was not sufficient to establish a fiduciary relationship. No. 13-61076-CIV, 2013 WL 4097779, at *1, 3 (S.D. Fla. Aug. 13, 2013). The court reasoned that there were no allegations, other than the mere existence of an employment relationship, that demonstrated an expectation of trust and confidence between the parties. *Id.* at *3.

Here, other than conclusory allegations that Caturano owed a "fiduciary duty," Armchem has not alleged facts demonstrating the requisite "trust and assent" and has instead alleged nothing more than a traditional employer-employee relationship. Armchem alleges that "Caturano

approached Armchem about expanding his employment with Armchem." [DE 39-1], Counterclaims ¶ 7. Armchem also states that "[f]rom July 2016 until his resignation in December 2019, Armchem employed Caturano as a Sales Manager, supervising Armchem and its affiliates sales representatives in selling and distributing products to customers in the State of North Carolina and other parts of the United States." *Id.* at ¶ 28. Armchem claims it "employed Caturano as a direct employee." *Id.* at ¶ 29. However, Armchem does not claim that Caturano ever held some position of power that would give him "special degree of trust" over Armchem. *Heritage Schooner Cruises, Inc.*, No. 13-22494-CIV, 2013 WL 5636689, at *3–4. The pleadings on their face make clear that Caturano was simply an employee of Armchem, which does not in itself give rise to a fiduciary duty as a matter of law.

      **C.**    ***Armchem Does Not Allege Conduct Constituting A Breach Until After the Alleged Fiduciary Duty Ended.***

Although Caturano denies the existence a cognizable fiduciary duty to Armchem, even if a duty existed, Armchem's claim fails anyway because Armchem does not allege that a breach occurred until two months after Caturano left Armchem to begin employment at Momar. Under long-standing Florida precedent, a former employee does not owe a fiduciary duty to a former employer and is free to compete against that former employer. *See Connelly v. Special Rd. & Bridge Dist. No. 5*, 99 Fla. 456, 467 (Fla. 1930) ("[A]fter his term of service has expired, [servant] is entitled to compete in business with his master on the same footing as a stranger, with the qualification that the servant is precluded from using for his own advantage information or material acquired by him in the course of his employment."); *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 645 (Fla. Dist. Ct. App. 1958) (denying breach of fiduciary duty allegation because "[I]n the absence of an express contract equity will not enjoin an agent or employee, after the cessation of his employment, from soliciting business from customers of a former principal or employer where

9

no business secret or trust had been reposed in him because of this relationship.").

Here, Armchem's breach of fiduciary duty claim stems from conduct that Caturano purportedly committed <u>after</u> he left Armchem to work for Momar. [DE 39-1], Counterclaims ¶ 38. Specifically, Armchem alleges that, *"[s]ince commencing employment with Momar,* Caturano has violated the terms of the Agreement by..." *Id.* ¶ 38 (emphasis added). Armchem does not allege that Caturano breached a duty, if any, while it would have existed. Accordingly, Armchem pleads itself out of court – again – by failing to allege that the breach of fiduciary duty occurred while that duty, if any, actually existed.

### III. Armchem Fails To State Claims For Tortious Interference with Contractual Relationship (Count IV) And Tortious Interference With Advantageous Business Relationship (Count V).

#### A. *Armchem's Claim of Tortious Interference With Advantageous Business Relationship (Count V) Merely Repeats Its Claim of Tortious Interference With Contractual Relationship (Count IV).*

Armchem's fifth claim for "tortious interference with advantageous business relationship" simply repeats its fourth claim for tortious interference with contractual relationship. *Compare* [DE 39-1] Counterclaims ¶ 90 ("Caturano unjustifiably and intentionally interfered with the contractual relationships between Armchem, and its affiliates, and their current and former employees by inducing them to breach their contractual obligations with Armchem and its affiliates and begin employment with Momar."); *with* [DE 39-1] Counterclaims ¶ 97 ("Caturano unjustifiably and intentionally interfered with the business relationship between Armchem, and its affiliates, and their current and former employees by inducing them to breach their contractual obligations with Armchem or its affiliates and begin employment with a competitor of Armchem."). Thus, despite the style difference, Count IV and V are identical and should be dismissed for the same reasons outlined below.

**B.     *Armchem's Claims For Tortious Interference With Contractual Relationship (Count IV) And Advantageous Business Relationship (Count V) Are Duplicative Of Its Breach of Contract Claim (Count II).***

As described *supra* pp. 5-7, Florida courts bar tort claims where plaintiffs fail to allege a breach of duty independent of an alleged breach of contract. *See Kika M2M LLC v. Pittman*, No. 17-60283-CIV, 2017 WL 7732872, at *5–6 (S.D. Fla. Sept. 5, 2017) (Dimitrouleas, J), (dismissing tortious interference claim that was duplicative of contract claim); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) (dismissing tort claim that was duplicative of contract claim); *Godwin Pumps of Am. v. Ramer,* 2011 WL 2181183, *2 (M.D. Fla. June 3, 2011) (same); *MKT REPS S.A. DE C.V. v. Std. Chtd. Bank Int'l (Ams.) Ltd.*, 2012 WL 2994125, *2-3 (S.D. Fla. July 20, 2012 (same). The theory for this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. *Id.* Any party to a contract who attempts to circumvent the contractual agreement by making tort claims will, in effect, be seeking to obtain a better bargain than originally made. *Id.*

Here, the complaint makes clear that Armchem's claims for tortious interference are not independent of its claim for breach of contract. In support of its breach of contract claim, Armchem alleges that it has "active ongoing relationships with specific customers and has legitimate business interests including, but not limited to, retaining such relationships." *Id.* at ¶ 66. It also alleges that "Caturano has breached the non-solicitation clause of the Agreement as he utilized Armchem's Confidential Information to solicit Armchem's and its affiliates' customers to become customers of Momar." *Id.* at ¶ 72. Armchem alleges that, "[a]s a result of Caturano's breach, Armchem and its affiliates have experienced and continues to experience economic loss in the form of lost customers and lost sales due to its competitor Momar having access to its Confidential Information via Caturano." [DE 39-1], Counterclaims, ¶ 57. Armchem claims it would be "irreparably injured if the Court did not enforce the provisions of the Agreement by prohibiting Caturano from

11

competing against Armchem and its affiliates . . . and contacting Armchem's and/or its affiliates' employees or associates." *Id.* at ¶ 61.

Similarly, in comparison, Armchem's tortious interference claims also state that "Caturano unjustifiably and intentionally interfered with the [contractual relationships / business relationship] between Armchem and its current and former employees by inducing them to breach their contractual obligations with Armchem." *Id.* at ¶¶ 90, 97. Armchem alleges that Caturano improperly used his knowledge of those relationships and understanding of Armchem's "Confidential Information," which resulted in "the loss of good will with [Armchem's] customers" and that Armchem "has experienced and continues to experience economic loss in the form of lost sales; customer good will; and the expense of recruiting, replacing, and training new sales people." *Id.* ¶¶ 93, 100.

On the face of the pleadings, Armchem's claims for tortious interference are precisely the same as its claim of breach of contract. On the one hand, Armchem claims that Caturano's employment contract prohibits him from improperly using Armchem's "Confidential Information" and recruiting Armchem's employees or inducing them to breach their own alleged contractual obligations; while on the other hand, Armchem takes the position that Caturano tortiously interfered with business relationships (without specifying which ones) from the same conduct. As a matter of law, Armchem cannot simultaneously pursue its tortious interference claims and its breach of contract claim on the basis of the same underlying conduct. Accordingly, Armchem's tortious interference claims should be dismissed.

        **C.**    ***Armchem Does Not Allege The Existence Of Contracts Or Business Relationships With Which Caturano Allegedly Interfered.***

Armchem has failed to state viable claims for tortious interference with a contractual and/or business relationship because it does not even allege a business relationship or contract with which

Caturano interfered. Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015).

Intentional interference claims that do not allege sufficient factual detail to support each element will not survive dismissal. *See CareersUSA, Inc. v. B2B Staffing Servs., Inc.*, No. 14-80096-CIV, 2015 WL 13776168, at *1 (S.D. Fla. Apr. 27, 2015). For example, in *CareersUSA, Inc.*, a personnel staffing firm, CareersUSA alleged that a former employee, Guerrero, stole proprietary information, trade secrets, and trademarked documents, and conspired with colleagues and other individuals to defraud CareersUSA and poach clients. *Id*. The court dismissed CareersUSA's intentional interference claim, reasoning that the claims was not "facially plausible" and "entirely devoid of any factual details," and explaining that plaintiffs must allege "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis in original). The court reasoned that mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

As for the first element—the existence of a business relationship—the Supreme Court of Florida has explained that the plaintiff need not allege the existence of an enforceable contract and that the plaintiff can prevail "if the jury finds that an understanding between the parties would have been completed had the defendant not interfered." *Id.* (quoting *Landry v. Hornstein*, 462 So.2d 844, 846 (Fla.Dist.Ct.App.1985)). As a general rule, a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers, but no cause of action

exists for tortious interference with a business's relationship to the community at large. *See Southern Alliance Corp. v. Winter Haven*, 505 So.2d 489, 496 (Fla. 2d DCA 1987). Rather, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).

Here, Armchem has vaguely stated that "contracts existed between Armchem and its affiliates current and former employees that included, but is not limited to employment agreements and non-compete and nonsolicitation agreements." [DE 39-1], Counterclaims ¶ 88. Armchem provides no further detail on any of these alleged relationships and does not provide the specific names of individuals involved. In fact, Armchem does not actually allege or identify any particular contract with which Caturano allegedly interfered, or any specific contract or relationship that would have been consummated but for Caturano's alleged interference. The closest Armchem comes to claiming the existence of a valid contract with which Caturano allegedly interfered appears in Paragraph 90 – "Caturano unjustifiably and intentionally interfered with the contractual relationships between Armchem, and its affiliates, and their current and former employees by inducing them to breach their contractual obligations with Armchem and its affiliates and begin employment with Momar." [DE 39-1] Counterclaims, ¶ 90. Armchem does not allege whether these "current and former employees" were under at will or express contracts of employment, and if the latter, what particular terms of employment that each of the "current and former employees" breached.

These bare bones pleadings do not rise to the level of the "threadbare recitals of the elements of a cause of action" that the United States Supreme Court has held to be insufficient,

(*Iqbal,* 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice")), much less establish the requisite "factual content" required under Florida law to bring an intentional interference claim. *See CareersUSA, Inc. v. B2B Staffing Servs., Inc.*, 2015 WL 13776168, at *1. For this reason alone, Armchem's claims for tortious interference should be dismissed.

### D. *Caturano's Purportedly Tortious Conduct Is Justified And Furthers A Legitimate Business Interest.*

Armchem's claims for tortious interference also fail because they do not allege that the interference was for any reason other than furthering a legitimate business purpose. The third element of a tortious interference claim – intentional and unjustified interference with a business relationship – requires the plaintiff to allege that "the defendant acted without justification." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280–81 (11th Cir. 2015).

The third prong of an intentional interference claim requires demonstration of both an intent to damage a business relationship and a lack of justification for doing so. *Id.*; *see also Smith v. Emery Air Freight Corp.*, 512 So. 2d 229, 230 (Fla. Dist. Ct. App. 1987). Significantly, where "there is no contract right to have the relation continued, but only an expectancy[,] . . . a competitor has the privilege of interference in order to acquire the business for himself." *Id.*; *accord Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So.2d 252, 255 (Fla.Dist.Ct.App. 1993). "If a defendant interferes with a contract in order to safeguard a preexisting economic interest of his own, the defendant's right to protect his own established economic interest outweighs the plaintiff's right to be free of interference, and his actions are usually recognized as privileged and nonactionable." *See Heavener, Ogier Servs., Inc. v. R.W. Fla. Region, Inc.*, 418 So.2d 1074, 1076–77 (Fla.Dist.Ct.App. 1982); *see also Sec. Title Guarantee Corp. of Balt.*, 543 So.2d 852, 855 (Fla. Dis. Ct. App. 1989) (noting that, as "long as improper means are not employed, activities

15

taken to safeguard or promote [a company's] own financial interests are entirely non-actionable.").

Moreover, even if the plaintiff has an existing, terminable-at-will contract, the defendant's interference to protect its economic interests is privileged unless the plaintiff alleges "a purely malicious motive" divorced from any "legitimate competitive economic interest." *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc*., 797 F.3d 1248, 1280–81 (11th Cir. 2015). Where the plaintiff alleges only a prospective business relationship—and thus the plaintiff has a "mere expectancy" of a new relationship—the privilege of interference similarly bars only interference consisting of malicious conduct. *Id.* It is only when the defendant's sole motive was a malicious wish to injure the plaintiff that a tortious interference claim can proceed. *Id.*

This precedent is consistent with long-standing Florida policy that "skill and knowledge are assets gained by an employee which are transferable to his future use in business and in life and which become a part of his own mental equipment . . . [i]t is impossible to leave them behind so long as they exist within the mind of the employee . . . [n]ot all knowledge gained by an employee or agent is confidential and in such instance equity has no place in restriction of its subsequent use." *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 645 (Fla. Dist. Ct. App. 1958).

Here, Armchem readily admits that any contract interference (which Caturano denies) was done in an effort to engage in legitimate competition with Armchem. Armchem's claims Caturano began working for Momar in February 2020 as a Sales Manager, which is the same position he held while working for Armchem. [DE 39-1], Counterclaim, ¶¶ 9, 33. Armchem claims that Caturano's job responsibilities at Momar are similar to his job responsibilities as an employee of Armchem and further alleges that Caturano's sales territory at Momar "is similar to, if not the same as, his sales territory while at Armchem." *Id.* at ¶¶ 36-37. Importantly, Armchem admits that "Momar is a direct competitor of Armchem" and provides the exact same description of both

16

Armchem's and Momar's business – that they are both in the business of "selling and distributing a range of cleaning supplies, maintenance products, and safety products to customers in various parts of the United States." *Id.* at ¶¶ 6, 28, 34-35.

Armchem claims that Caturano committed misconduct by "[r]eaching out to several sales representatives he came to know or worked with while at Armchem and recruiting them to accept employment at Momar;" "[u]sing the Confidential Information he learned while at Armchem to recruit Armchem's, and its affiliates', salespeople to work at Momar"; "[p]roviding the Confidential Information relating to Armchem's and its affiliates employees and associates to Momar in order to give an unfair business advantage to Momar;" and "[o]therwise competing directly with Armchem and its affiliates in the restricted geographical territory by working for Armchem's and its affiliates' direct competitor in the same or similar capacity as his job at Armchem." *Id.* at ¶ 38. Based on these allegations, Armchem brings its claim for tortious interference and states that "Caturano . . . interfered with the contractual relationships between Armchem, and its affiliates, and their current and former employees by inducing them to breach their contractual obligations with Armchem and its affiliates and <u>begin employment with Momar</u>." *Id.* at ¶ 90 (emphasis added).

Armchem thus admits that any contract interference (which Caturano denies) was done in an effort to engage in competition with Armchem. As this Court has acknowledged, engaging in competition—including recruiting at-will employees to work for a competitor—is a well-recognized legitimate business interest that makes any interference justified. Armchem has also wholly failed to allege that Caturano's alleged actions (which, again, Caturano denies) were done for a malicious purpose. Therefore, Armchem has failed to state plausible claims for tortious interference because it cannot satisfy that third element – that the conduct be malicious and without

17

justification.

## CONCLUSION

Armchem's amended counterclaims for (1) breach of fiduciary duty (Count III), (2) tortious interference with contractual relationship (Count IV), and (3) tortious interference with advantageous business relationship (Count V), fail to state a plausible claim for relief for the various reasons described above. Because Armchem has failed to satisfy its pleading obligations with respect to these claims, the Court should dismiss them pursuant to Fed.R.Civ.P 12(b)(6) with prejudice.

WHEREFORE, Plaintiff/Counterclaim-Defendant John Caturano, respectfully requests this Court enter an Order granting the relief requested herein together with such further relief as this Court deems proper.

Respectfully Submitted,

/*s/ John A. Turner*_____
SAUL EWING ARNSTEIN & LEHR LLP
515 N. Flagler Drive
Suite 1400
West Palm Beach, FL 33401
Florida Bar No. 000922
John.turner@saul.com
Linda.dunne@saul.com
Wpb-ctdocs@saul.com

Andrew E. Bollinger, Esq. (admitted pro hac vice)
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark, Suite 4200, Chicago, IL

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                 Respectfully Submitted,

                 /*s/ John A. Turner*_____
                 SAUL EWING ARNSTEIN & LEHR LLP
                 515 N. Flagler Drive
                 Suite 1400
                 West Palm Beach, FL 33401
                 Florida Bar No. 000922
                 John.turner@saul.com
                 Linda.dunne@saul.com
                 Wpb-ctdocs@saul.com

                 Andrew E. Bollinger, Esq. (admitted pro hac vice)
                 SAUL EWING ARNSTEIN & LEHR LLP
                 161 North Clark, Suite 4200, Chicago, IL

## SERVICE LIST

**John Caturano v. Armchem International Corp.**
**CASE NO. 20-62359-CIV-DIMITROULEAS**
**United States District Court, Southern District of Florida**

John M. Moye, Esq.
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700
Atlanta, GA 30305
jmoye@btlaw.com

John A. Turner, Esq.
Saul Ewing Arnstein & Lehr LLP
Northbridge Centre, Suite 1400
515 North Flagler Drive
West Palm Beach, FL 33401
John.turner@saul.com
Linda.dunne@saul.com
Wpb-ctdocs@saul.com

Oscar E. Soto, Esq.
The Soto Law Group
2400 E. Commercial Blvd., Suite 400
Ft. Lauderdale, FL 33308
oscar@sotolawgroup.com
erica@sotolawgroup.com

Andrew E. Bollinger, Esq.
Saul Ewing Arnstein & Lehr LLP
161 North Clark Street, Suite 4200
Chicago, IL 60601
Andrew.bollinger@saul.com